IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil No. L-07-2500 |
| BALTIMORE COUNTY, *et al.* | * * | |
| Defendants | * | |

**<u>MEMORANDUM</u>**

Now pending before the Court is the Equal Employment Opportunity Commission's ("EEOC's") Motion to Determine the Sufficiency of Answers and Objections to its Requests for Admission. Docket No. 158. The issues have been comprehensively briefed, and no hearing is deemed necessary.[1] See Local Rule 105.6 (D. Md. 2011). For the reasons stated herein, the Motion will be GRANTED IN PART and DENIED IN PART.

**I.      BACKGROUND**

On August 18, 2011, Defendant Baltimore County, Maryland (the "County") responded to Requests for Admission served by the EEOC. Of the 17 requests, the County granted one admission. It denied 14, in whole or in part, based on contested terms, denied one because it disagreed with a statement in the request, and denied one on the basis of insufficient information. On August 19, 2011, the EEOC sent the County a letter challenging the sufficiency of its responses and objecting that they failed to comply with the terms of Fed. R. Civ. P. 36. On August 26, 2011, the County provided supplemental answers that slightly elaborated certain of

---

[1]      The Court specifically wishes to thank Baltimore County for organizing its response in the format set out in Local Rule 104.8.a, which greatly aided the Court's consideration of the issues.

1

its objections, but left their substance unchanged. The EEOC subsequently filed the instant Motion, which asks the Court to deem the contested requests admitted or, at the least, to order amended answers. It also seeks reasonable attorneys' fees in connection with the preparation and briefing of its Motion.

II.   ANALYSIS

Rule 36 of the Federal Rules of Civil Procedures authorizes a party to serve any other party with "a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). With regard to answers, it states:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4). If a party objects to a request, "[t]he grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial." Fed. R. Civ. P. 36(a)(5). The purpose of admissions is "to narrow the array of issues before the court, and thus expedite both the discovery process and the resolution of the litigation." Adventis, Inc. v. Consol. Prop. Holdings, Inc., 124 F. App'x 169, 172 (4th Cir. 2005).

By far the most common reason for the County's denials and objections in this case is that it takes issue with specific terms used in the requests. The County objects to Requests 1–5

and 8, which contain the phrase "age-based employee contribution rates," on the grounds that "that phrase improperly conveys the impression that Baltimore County agrees that the contribution rates are based solely on age, when in fact those rates are based on numerous financial factors." See Supplemental Response to Request for Admissions, Docket No. 158-6. It objects to Requests 4–6, 9–11, and 14–17, which contain the phrase "service retirement," on the grounds that "confusion which exists as to whether service retirement refers to a retirement based on reaching normal retirement age or a retirement based on a number of years of service." Id. It objects to Request 7, which contains the term "proxy," on the grounds that "that term implies a violation based on age and no such negative implication should be drawn." Id. The Court addresses each objection in turn.

### i. Requests 1–5, 8

The term "age-based contribution rates" might be somewhat misleading in a vacuum, though its meaning seems clear enough in the context of both the requests for admission and the case at large. The basis for the calculation of contribution rates is, of course, the central issue in dispute, and no reasonable reader would take an admission relating to "age-based contribution rates" as conceding the very focus of litigation. Nor are there multiple different contribution rates that might be confused with one another.

The larger problem with these denials is that they quibble over terminology while ignoring the clear object of the requests. For example, Request 1 asks the County to admit that "[t]he age-based employee contribution rates at issue in this lawsuit were implemented in 1977." As the EEOC points out, "The purpose of the request is obviously to gain the County's admission concerning the year in which the rates at issue in this lawsuit were implemented."

3

Pl.'s Mot. 19, Docket No. 158-1. The County's objection and denial ignore Rule 36's requirement that "[a] denial must fairly respond to the substance of the matter." Fed. R. Civ. P. 36 (a)(4). If, as it appears, the County takes issue only with the phrasing of a single term, it could easily have addressed the request while simply noting its objection, thus abiding by the Rule's instruction to "specify the part admitted and qualify or deny the rest." Id.

A court may deem a matter admitted when the objecting party's answers are evasive or fail to respond to the substance of the question, and the evidence establishes that the request should have been admitted. See Southern Ry. Co. v. Crosby, 201 F.2d 878, 880–81 (4th Cir. 1953). In Crosby, the Court stated that "[p]arties may not avoid the failure to deny matters necessarily within their knowledge by giving any such evasive answer . . . ." and that "[a] denial coupled with a general exception of doubtful import, will constitute an admission." Id. at 880.

With regard to Request 1, the deposition testimony of David Driscoll, the County's Rule 30(b)(6) designee, clearly shows that there is no dispute as to when the rates in question were implemented. See Driscoll Dep. 57:21–23, Pl.'s Mot. Ex. B, Docket No. 158-3 ("[t]he last time a calculation was made by Buck of employee contribution percentages was in 1977"). To avoid any possible ambiguity or confusion, the Court will amend Request 1 to remove of the qualifier "age-based" from the term "age-based contribution rates." With that modification, Request 1 is deemed admitted.

**Request 2:** "The age-based employee contribution rates that were implemented in 1977 appear to be a modified version of the rates that were implemented when the retirement system was established in the 1940s."

**Response 2:** In addition to the aforementioned objection regarding "age-based contribution rates," the County states, "Defendant has insufficient information to admit or deny

4

this allegation. David Driscoll testified in his deposition that he did not know for certain that the rates implemented in 1977 were a modification of the rates established in the 1940's, but he believed that to be the case." The County also "objects to the use of the phrase 'appears to be a modified version of the rates' because that phrase is imprecise and could result in Plaintiff requesting the court to draw incorrect legal conclusions from either an admission or a denial."

Requests for admission of fact, by their very nature, fit poorly with phrases such as "appear to be" and imprecise terms such as "modification." The County has admitted that Driscoll believes that the 1977 rates were obtained by modifying the 1940s rates, but denies knowledge of a definitive connection. With the removal of the qualifier "age-based" from the term "age-based contribution rates," this answer is sufficient.

**Request 3:** "The County does not know how the original age-based employee contribution rates that were implemented when the retirement system was established in the 1940s or the modified rates that were implemented in 1977 were calculated, because the work papers showing these calculations do not exist."

**Response 3:** In addition to the aforementioned objection regarding "age-based contribution rates," the County "admits that the work papers showing these calculations do not exist."

The County has responded to the second part of the request, but not the first. It is, therefore, directed to prepare an amended response admitting or denying knowledge of how the contribution rates were calculated. Its response may remove the qualifier "age-based" from the term "age-based contribution rates."

**Request 4:** "The age-based employee contribution rates that were implemented when the retirement system was established in the 1940s appear to have been set to provide approximately half of a member's service retirement benefit at age 65."

**Response 4:** In addition to the aforementioned objection regarding "age-based contribution rates," the County objects to the term "service retirement," which objection is addressed infra.

Driscoll testified on deposition that "the employee contributions in this system were typically targeted at covering half of an individual's benefit. That's certainly the way they were developed initially in the 1940's." Driscoll Dep. 83:22–84:3. With the minor substitution of "were typically targeted at" for the phrase "appear to have been set to," and the removal of the qualifier "age-based" from the term "age-based contribution rates," this request is deemed admitted.

**Request 5:** "The age-based employee contribution rates that were implemented when the retirement system was established in the 1940s appear to have been set based on the assumption that employees would become eligible for service retirement upon attaining age 65."

**Response 5:** The County objects on the aforementioned grounds of the terms "age-based contribution rates," and "service retirement."

At deposition, Driscoll agreed with the propositions that the original rates "turned solely on age" and "assumed that employees would retire at age 65." Id. at 583:13–25. With the substitution of "were" for the phrase "appear to have been set," and the removal of the qualifier "age-based" from the term "age-based contribution rates," this request is deemed admitted.

**Request 8:** "In 1977, the age-based contribution rates that were implemented when the retirement system was established in the 1940s appear to have been uniformly reduced by a factor of 7.65% at all ages."

**Response 8:** The County objects on the aforementioned grounds relating to the term "age-based contribution rates."

Driscoll testified that "[t]he rate that Buck had calculated earlier on the basis of 4 percent interest would have been reduced uniformly at each entry age by 7.65 percent." Id. at 109:16–20; see also id. at 100–02. With the substitution of "were" for the phrase "appear to have been," and the removal of the qualifier "age-based" from the term "age-based contribution rates," this request is deemed admitted.

### ii.  Requests 4–6, 9–11, and 14–17

The County denies and objects to requests 4–6, 9–11, and 14–17 because for their use of the term "service retirement." It argues that "confusion exists as to whether service retirement refers to a retirement based on reaching normal retirement age or a retirement based on a number of years of service."

Again, the County focuses on semantics in order to sidestep the substantive content of the requests. Moreover, the meaning of the term "service retirement" can hardly be disputed when the term is used extensively throughout the very provisions of the Baltimore County Code at issue in this case. See, e.g., Balt. Cnty. Code § 5-1-203(a)(1) ("Commencing as of July 1, 1973, the normal service retirement age for a member in Group 3 shall be the age of sixty (60) or the age at which the member completes thirty (30) years of creditable service, whichever is earlier.") The EEOC's use of the term in its requests is not at all inconsistent with its usage in the statute.

7

In addition, several of the requests make quite clear which alternative is being discussed, though in none does the distinction appear crucial. For example, Request 5, quoted above, asks the County to admit that the contribution rates implemented when the retirement system was established in the 1940s (when, as Driscoll established, there was no option for retirement based on years of service) had been set "based on the assumption that employees would become eligible for service retirement upon attaining age 65." Clearly there can be no confusion about the meaning of the term, and the County's argument to the contrary is thoroughly unavailing.

**Requests 4 and 5:** Addressed supra.

**Request 6:** "When the retirement system was established in the 1940s, employees did not have the option to receive an unreduced service retirement benefit based solely on their years of creditable service."

**Response 6:** The County objects on the aforementioned grounds relating to the term "service retirement."

Driscoll agreed at deposition that "the original rates that were calculated in the '40s were calculated based on an assumption that retirement eligibility turned solely on age." Driscoll Dep. 583:13–21. This request is deemed admitted.

**Request 9:** "During the relevant time period, the contribution rates for employees hired prior to July 1, 2007 have been based on the assumption that employees would become eligible for service retirement upon attaining age 65."

**Response 9:** The County objects on the aforementioned grounds relating to the term "service retirement."

When asked at deposition "And do you remember what retirement age is assumed in the employee contribution rate calculations that were used for the rates that were calculated in the

8

'40s or do you know?" Driscoll answered, "I think it was fairly clear that it—given the goal of accumulating a certain annuity at the age of 65, the age of 65 was assumed." Id. at 556:19–557:4. It is not self-evident from the Court's reading of Driscoll's deposition, however, whether the assumption of retirement at age 65 continued up to and through the relevant time period. The County is, therefore, directed to prepare an amended answer either admitting or denying the substance of the EEOC's request.

**Request 10:** "During the relevant time period, correctional employees hired prior to July 1, 2007 have been eligible to receive an unreduced service retirement benefit after twenty years of creditable service."

**Response 10:** The County objects on the aforementioned grounds relating to the term "service retirement."

Driscoll testified at deposition that correctional officers "could collect a benefit irrespective of age provided that [they had] completed 20 years of service, credible service." Id. at 558:18–559:6. This request is deemed admitted.

**Request 11:** "During the relevant time period, general employees hired prior to July 1, 2007 have been eligible to receive an unreduced service retirement benefit after thirty years of creditable service or upon attaining age 60, whichever is earlier."

**Response 11:** The County objects on the aforementioned grounds relating to the term "service retirement."

At deposition, Driscoll answered in the affirmative when asked, "this section of the codes explicitly defines normal retirement age for general employees at the age of 60 or the age at which the member completes 30 years of credible service, whichever is earlier?" Id. at 555:14–556:18. This request is deemed admitted.

**Requests 14–17:** These requests concern calculations contained in letters sent to Fred Homan from John Thompson (March 15, 1988) and S. Lynn Hill and Kim Nicholl (August 16, 2000).

**Responses 14–17:** The County objects on the aforementioned grounds relating to the term "service retirement."

The Court finds Driscoll's responses on these subjects to be somewhat less than clear-cut. See id. at 541–42, 272, 79, 87, 114. The County is directed to prepare amended answers admitting or denying the substance of these requests.

### iii. Request 13

Request 13 asks the County to admit that "[t]he County's assertion that prior to 2007 older workers actually bore less of the relative costs for their benefits than younger employees is based on the calculations described in John Thompson's March 15, 1988 letter to Fred Homan." The County denied the request on the grounds that "those calculations are not the only basis for the assertion. Defendant relies on the deposition testimony of David Driscoll and the documents produced in discovery regarding this request."

In support of its contention that this request should be deemed admitted, the EEOC cites testimony from Driscoll stating that "workers who were older at hire actually bore less of the relative costs for their benefits than workers who were younger at hire." Id. at 533:23–534:2. When asked about the basis for this assertion, however, Driscoll gave a lengthy answer that mentioned several factors, which at no point did he characterize as an exclusive list. He did mention such a finding, "when Mr. Thompson, for example, did his calculation . . . that he

reported in his March 15, 1988 letter . . . ." Id. at 534:14–17 (emphasis supplied). Thus the County's denial stating that Driscoll had other bases for his assertion is completely proper.

### iv. Request 7

Request 7 asks the County to admit that "when the retirement system was established in the 1940s, age at enrollment was a proxy for years until normal retirement age." The County objects that "the term 'proxy' . . . implies a violation based on age and no such negative implication should be drawn."

This objection is puzzling, to say the least. A proxy is simply "something serving to replace another thing or substance; a substitute." Webster's 3d New International Dictionary (unabridged 1986). It has been established that, at the system's creation, all workers were eligible for retirement only at a certain age and regardless of years of service, and the Court can fathom no basis for any "negative implication." Moreover, Driscoll testified repeatedly, without objection, to this very phrasing. See id. at 579:7–10 ("age at entry to the system is in this case a proxy for time to retire."); id. at 584:25–585:4 ("age is a proxy for time to retirement under the earlier provisions prior to the enhancement."). This request is deemed admitted.

### v. Award of Attorneys' Fees

The EEOC has moved for an award of fees incurred in the preparation and briefing of its Motion. With regard to motions made for discovery under Rule 36, Rule 37(a) states

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's

> reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> > (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> > (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> > (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A) (emphasis supplied). The Rule also states that, if the Motion is granted in part and denied in part, "the court may . . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

In this instance, an award of fees is appropriate. The EEOC attempted in good faith, before filing the Motion, to resolve the disagreement in accordance with Rule 37(a)(5)(A)(i), Local Rule 104.7 (D. Md. 2011), and the Court's informal discovery dispute resolution policy. Furthermore, the Court finds that the County's denials and objections were not substantially justified.

The Court has determined that substantially all of the EEOC's Motion must be granted, though, as addressed above, certain portions will also be denied. The EEOC is directed to submit, on or before **December 7, 2011**, a claim for what it believes to be a reasonable apportionment of attorneys' fees, along with supporting documentation. The County may file a response contesting the EEOC's calculation on or before **January 6, 2012**. The Court will then consider the request and determine the amount of fees to be awarded at the same times as decision on the merits of the case.

## III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, GRANT IN PART and DENY IN PART the EEOC's Motion Determine the Sufficiency of Answers and Objections. Docket No. 158.

Dated this 7th day of November, 2011.

                                                                                   /s/
                                                      Benson Everett Legg
                                                      United States District Judge