IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT | * | |
| OPPORTUNITY COMMISSION, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. L-07-2500 |
| | * | |
| BALTIMORE COUNTY, *et al.* | * | |
| | * | |
| Defendants | * | |

**************

## MEMORANDUM

This suit arises under the federal Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 621 et seq.  Plaintiff, the Equal Employment Opportunity Commission ("EEOC")

challenges the legality of certain provisions of Defendant Baltimore County's (the "County's")

employee pension plan.  Presently pending are the EEOC's Motion for Partial Summary

Judgment, Docket No. 172, and Baltimore County's Motion for Summary Judgment, Docket No.

175.  The issues have been fully briefed, and on August 17, 2012 the Court heard oral argument.

For the reasons stated herein, the Court will, by separate Order, grant partial summary judgment

in favor of the EEOC on the issue of liability.


## I.     BACKGROUND

The material facts of this case are largely undisputed.  Pursuant to Article 5 of the

Baltimore County Code, the County maintains a defined benefit pension plan known as the

Employee Retirement System ("ERS" or the "Plan").  Participation in the ERS is mandatory for

full-time employees younger than fifty-nine years old.

As instituted in 1945, the ERS provided for County employees to retire at age 65 with a pension benefit of "approximately 1/70 of the average final compensation[] of the member, multiplied by the number of years of service rendered prior to the date of retirement." <u>See</u> Pl.'s Mot. Summ. J. Ex. 3, Docket No. 172-6 at 4 (The Employees' Retirement System of Baltimore County: A Handbook of Information Setting Forth the Privileges and Obligations of Members Under the Provisions of the System (January 1, 1945)).  Employees were required to contribute to the Plan at different rates based on the age at which they joined.  These rates were established for the County by its actuary, Buck Consultants ("Buck"), with the intent that an employee's contributions would be sufficient to fund approximately one-half of his or her final retirement benefit, with the other half to be funded by the County.  <u>Id.</u> at 8.  Because their contributions would have less time before retirement to accrue earnings, older workers were required to contribute a higher percentage of their salary than younger workers.  For example, a laborer who became a member of the plan at age 25 was required to contribute 2.75%, whereas a laborer who joined at age 45 was required to contribute 4%.  <u>See id.</u> at 9 (listing rates).[1]

Since its inception, the ERS has been modified in several ways.  In 1959, the County opened the ERS to fire and police personnel who, unlike general County employees, were permitted to retire at age 60.  At some point, the normal retirement age for general employees was lowered to 60 as well.  Contribution rates were also lowered slightly in 1977, as a result of changed assumptions relating to the rate of return on invested contributions.  Most important to this case, however, is the County's decision to provide for an early retirement option.  In 1973, the County amended the Plan to allow general employees to retire with full benefits after 30 years of service, irrespective of their age.  The option was extended to police officers in 1988

---

[1]     Presumably because of their longer life expectancy, women were also required to contribute a higher percentage of their salary than men.  This distinction was eliminated in 1977.

and to correctional officers in 1989, both of whom were permitted to retire with full benefits after 20 years of service.  Each time, this benefit was fully funded by the County, with no additional contributions of any kind from employees.

On June 6, 2007, the County changed its pension system again.  Under the new system, employees hired after July 1, 2007 contribute to the ERS at a flat rate, regardless of their age at the time of hiring.  As noted above, individuals hired before that date make contributions at rates determined by their age at the time of enrollment.  The EEOC brought this action on behalf of older Baltimore County workers hired prior to July 1, 2007.

In 2008, after establishing that the relevant facts were not in dispute, the Court permitted the filing of summary judgment motions without discovery.  The Court subsequently awarded summary judgment in favor of the County, finding that the ERS did not run afoul of the ADEA because the disparate contribution rates were justified by a permissible financial consideration: the time value of money.  The Court reasoned that "older new-hires have less time to accumulate earnings on both the County's and their personal contributions to the ERS," and that, therefore, "Baltimore County's system is based not on age—a protected category—but on the number of years an employee has until reaching retirement age."  Mem. Op. at 7-8, Docket No. 100.

The EEOC appealed.  The Fourth Circuit Court of Appeals vacated this Court's entry of judgment and remanded the case, pointing out that the time value of money may not justify the disparate contribution rates in all cases.  It pointed to the following hypothetical:

> [U]nder the express terms of the ERS, two new-hires with the same number of years until retirement age, and therefore the same time value of money, can be required to pay different contributions into the ERS. For example, if a twenty-year-old new-hire and a forty-year-old new-hire enroll in the ERS as correctional officers at the same time, they have the same number of years until retirement eligibility. However, the forty-year-old must contribute 5.57% of his annual salary while the twenty-year-old need only contribute

> 4.42%.  This disparity is not justified by the time value of money
> because both employees contribute for the same twenty years.

E.E.O.C. v. Balt. Cnty., 385 F. App'x 322, 325 (4th Cir. 2010) (internal citations and footnotes

omitted).  The Fourth Circuit concluded that it was "unable to determine as a matter of law that

the contribution rates are justified by permissible financial considerations" and remanded "for

the district court to decide whether the ERS is supported by such considerations."  Id. at 325-26.

Following remand, the parties engaged in limited discovery related to the establishment

of the plan terms and the derivation of the contribution rates.  Discovery having been completed,

both the EEOC and the County again move for summary judgment.


## II.      LEGAL STANDARD

The Court may grant summary judgment when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also

Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial

judges have "an affirmative obligation" to prevent factually unsupported claims and defenses

from proceeding to trial).  Nevertheless, in determining whether there is a genuine issue of

material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in

the light most favorable to the non-moving party.  Pulliam Inv. Co. v. Cameo Props., 810 F.2d

1282, 1286 (4th Cir. 1987).

"When both parties file motions for summary judgment . . . [a] court applies the same

standard of review."  McCready v. Standard Ins. Co., 417 F. Supp. 2d 684, 695 (D. Md. 2006)

(citing Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir.1991)).  Furthermore, "each

motion [will be considered by a court] separately on its own merits to determine whether either of the parties deserves judgment as a matter of law."  <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003).

III.    **ANALYSIS**

The ADEA forbids an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  "The term 'compensation, terms, conditions, or privileges of employment' encompasses all employee benefits, including such benefits provided pursuant to a bona fide employee benefit plan."  § 630(l).  However, it is not unlawful for an employer to discriminate based on age if "the differentiation is based on reasonable factors other than age."  § 623(f)(1).

**A.    Permissible Financial Considerations**

It is appropriate to begin a renewed discussion of this case with the specific question that led the Fourth Circuit to vacate this Court's earlier judgment: Can the County adduce non-age-related financial considerations that justify the disparity in contribution rates between older and younger workers?  The answer is no.  The County was given an opportunity to conduct full discovery, including a comprehensive Rule 30(b)(6) deposition of Buck Consultants, the actuarial firm that has been responsible for the ERS since its creation.  Nevertheless, the County has come forward with no evidence demonstrating why two workers with the same number of years until retirement eligibility should be required to contribute to the ERS at different rates.

Based on the history of the plan, this is unsurprising.  The problem identified by the Fourth Circuit appears to be an unintended consequence, resulting from the interaction of two separate and independently lawful provisions of the County Code enacted decades apart.  It is clear from the record that the age-based contribution rates, when put in place in 1945 until modified in 1977, were fully justified by the time value of money rationale identified by this Court in its prior opinion.  Using projected years until retirement, Buck calculated the percentage of an employee's pay that would be required to fund approximately one-half of his or her retirement benefit.  Because all employees were eligible to retire at age 65, age served as a proxy for years until retirement.  Thus, notwithstanding the fact that the ERS nominally based an employee's contribution rate on the age at which he or she was hired, years until retirement was the real determining factor.

In 1973 the County, at no additional cost to employees, added a generous early retirement option based on years of service.  Such a benefit is explicitly authorized by § 4(l) of the ADEA, which provides that no violation occurs solely because "a defined benefit plan . . . provides for . . . payments that constitute the subsidized portion of an early retirement benefit."  29 U.S.C. § 623(l)(1)(A)(ii)(I).[2]  A secondary effect of this provision, however, was to decouple an employee's age from his or her years until retirement.  Age of retirement is no longer yoked to chronological age because some employees take early retirement while others do not.

It appears, however, that neither Buck nor the County considered what effect the early retirement benefit might have on the rest of the ERS.  At no time were the contribution rates adjusted to take account of the early retirement option.  The County has never submitted

---

[2]     This provision of the ADEA, which authorizes employers to subsidize employees' early retirement benefits, does not authorize employers to charge older hires a greater contribution rate than younger hires for the non-subsidized portion of their retirement benefit.  See 29 U.S.C. § 623(l)(1)(A)(ii)(I).

calculations that attempt to demonstrate that requiring higher contributions from older workers could be financially justified after the early retirement option was added.

The County does offer some evidence relating to the contribution rates as recalculated in 1977. In that year, a decision was made to increase the assumed rate of return on invested contributions form 4% to 5%. See Def.'s Mot. Summ. J. Ex. App. 192 (Dep. of David Driscoll). Rather than recalculating the contribution rates for all age groups to reflect this new assumption, the County decided to reduce all contribution rates by a uniform 7.65%. Id.; see also Pl.'s Mot. Summ. J. Ex. 4, Docket No. 172-7 (Correspondence from Walter Richardson, County Director of Finance, to Buck Consulting Actuaries (June 13, 1977)). As a result of the uniform reduction, between 1997 and 2007, older workers actually bore slightly less of the relative cost of their retirement benefits, while younger workers bore slightly more.

In support of this conclusion, the County submits a series of calculations carried out by Buck in 2000 comparing the 1977 rates to "what the member rates would be today if they were to be determined based on the current actuarial assumptions—the assumptions used to determine the required Employer contributions to the System." Def.'s Mot. Summ. J. Ex. App. 305 (Correspondence from Buck Consultants to Fred Homan (August 16, 2000)) (emphasis original). Such a calculation was necessary to justify the 1977 rates because the original working papers showing how they were derived have been lost or destroyed. According to Buck, an employee enrolled at age 20 contributed 4.42% of his salary, though only 4.35% would be required to fund his or her benefit. By contrast, an employee enrolled at age 55 contributed 7.23%, though full funding would require a greater contribution: 7.61%. Id.

This evidence, the County asserts, conclusively establishes that older workers were treated more—not less—favorably under the terms of the ERS, and, therefore, there can be no

7

ADEA violation.  This argument misses the mark, however, as the County's new evidence

merely demonstrates that the reduced contribution rates are advantageous to older workers,

assuming a uniform retirement age of 60.  The evidence does not address the impact of early

retirement.

Having concluded that there are no non-age-related financial considerations that justify

the disparity in contribution rates between older and younger workers, the Court considers

whether the ERS violates the ADEA because the contribution rates expressly rely on age.

### B.        Disparate Treatment Violation of the ADEA

In a disparate treatment case such as this one, the EEOC bears the burden of establishing

that the protected trait, age, "actually motivated the employer's decision."[3]  Hazen Paper Co. v.

Biggins, 507 U.S. 604, 610 (1993).  As the Supreme Court noted, this burden may be satisfied in

different ways:

> The employer may have relied upon a formal, facially
> discriminatory policy requiring adverse treatment of employees
> with that trait.  Or the employer may have been motivated by the
> protected trait on an ad hoc, informal basis.  Whatever the
> employer's decisionmaking process, a disparate treatment claim
> cannot succeed unless the employee's protected trait actually
> played a role in that process and had a determinative influence on
> the outcome.

Id.  (citations omitted).

As the EEOC freely admits, there is no evidence to suggest that the County subjectively

intended, at any point in the history of the ERS, to treat older workers less favorably than

---

[3]        The EEOC does not advance a "disparate impact" theory, which focuses on unjustified
discriminatory results.  See Smith v. City of Jackson, 544 U.S. 228, 239-40 (2005).

younger workers.  The County's benign motives are, however irrelevant because the ERS, in light of the early retirement option, is facially discriminatory.

"[A] statute or policy that facially discriminates based on age suffices to show disparate treatment under the ADEA."  Ky. Ret. Sys. v. E.E.O.C., 554 U.S. 135, 147-48 (2008).  Because the ERS is facially discriminatory, the Court need not apply the six-factor test that the Supreme Court laid out in Kentucky Retirement Systems.  See id. at 143-47.  The pension plan in that case was ostensibly age-neutral.  Using the six-factor test, the Supreme Court examined the plan for indicia of an underlying age bias.  Id. at 143-44.  Finding none, it concluded that pension status, not age, explained any differences in the way the plan treated different employees.  Id. at 148.

In this case, however, after the County adopted the early retirement option, the different contribution rates charged to different employees are explained by age rather than pension status. Two employees with the same number of years until retirement eligibility—that is, the same pension status—do not necessarily contribute at the same rate.  Pension status, therefore, cannot be the driving factor behind the disparate treatment, which is directly linked to an employee's age.  As such, because age is the "but-for" cause of the disparate treatment, the ERS violates the ADEA.  See Gross v. FBL Fin. Services, Inc., 557 U.S. 167, 177 (2009).

**IV.    CONCLUSION**

For the foregoing reasons, the Court will, by separate Order, GRANT the EEOC's

Motion for Partial Summary Judgment, Docket No. 172, and will DENY Baltimore County's

Motion for Summary Judgment, Docket No. 175.  The parties are directed to provide a status

report by November 9, 2012, describing the next steps in this litigation.


SO ORDERED this <u>16th</u> day of October, 2012.


                                        _____/s/_____
                                        Benson Everett Legg
                                        United States District Judge