IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. RDB-07-2500 |
| | * | |
| BALTIMORE COUNTY, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In April of 1999 and January of 2000, the U.S. Equal Employment Opportunity Commission ("EEOC") issued Notices of Charge of Discrimination to Baltimore County on behalf of two Baltimore County correctional officers who alleged that Baltimore County's employee pension plan, and employee plan contribution rates, discriminated against them based on their ages. *See EEOC v. Baltimore Cty., et al.*, 747 F.3d 267, 271 (4th Cir. 2014), *cert. denied sub nom. Baltimore Cty. v. EEOC*, 135 S. Ct. 436 (2014). The County timely denied these charges and provided the EEOC with all requested information, including its actuary's cost justification for the employee contribution rates. With no further inquiry from the EEOC, five and one half years passed until March of 2006 when the EEOC issued a notice that the County's pension plan violated the Age Discrimination in Employment Act of 1967 ("ADEA"). Another year and one half passed before the EEOC brought this action against Baltimore County ("Defendant" or the "County") in September of 2007, alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), *as amended*, 29 U.S.C. §

1

621, *et seq.*  *See generally* Am. Compl., ECF No. 57.  Specifically, the EEOC has alleged that "[since] at least January 1, 1996, [the] County has engaged in unlawful employment practices by requiring Wayne A. Lee, Richard J. Bosse, and a class of similarly situated [County employees at least forty years of age] to pay higher contributions than those paid by younger individuals to Defendant's pension plan," in violation of 29 U.S.C. §§ 623(a)(1) & (i)(1).  *Id.* at ¶ 14. [1]  Via Memorandum Opinion and Order dated October 17, 2012, Judge Benson E. Legg[2] of this Court "grant[ed] partial summary judgment in favor of the EEOC on the issue of liability."[3]  *EEOC v. Baltimore Cty.*, No. L-07-2500, 2012 WL 5077631, at *1 (D. Md. Oct. 17, 2012).  Judge Legg's ruling was subsequently affirmed by the United States Court of Appeals for the Fourth Circuit and remanded "for further proceedings to address the issue of damages."  *EEOC v. Baltimore Cty., et al.*, 747 F.3d 267, 274-75 (4th Cir. 2014).

There is no dispute in this case that the Union Defendants have bargained for the County's pension plan contribution rates from the 1970s through the present and in fact "acquiesce[d]" to "or even support[ed]" those rates.  Mem. Supp. EEOC Mot., p. 16, ECF No. 241-1.  Additionally, as discussed *infra*, the parties and all six Union Defendants have approved a plan for the gradual equalization of contribution rates under the County's pension plan.  The terms of that plan have since been incorporated into a Joint Consent

---

[1] The EEOC has also named six unions, representing County employees, as indispensable party defendants to this lawsuit ("Union Defendants").  *Id.* at ¶¶ 6-12.

[2] This case was reassigned to the undersigned Judge Richard D. Bennett on February 7, 2013, upon Judge Legg's retirement from this Court.

[3] As discussed *infra*, Judge Legg initially granted the County's Motion for Summary Judgment, but his ruling was subsequently vacated by the United States Court of Appeals for the Fourth Circuit.  *See EEOC v. Baltimore Cty.*, 385 F. App'x 322, 385 (4th Cir. 2010).  On remand, Judge Legg granted partial summary judgment for the EEOC on the issue of liability, but granted the County leave to file an interlocutory appeal because "the question presented [was] a novel one."  Dec. 7, 2012 Letter Order, p. 4, ECF No. 206.

Order Regarding Injunctive Relief, signed by this Court on April 26, 2016 (ECF No. 238).[4] However, the EEOC contends that both retroactive and prospective monetary damages are mandatory in this case and are still necessary to compensate older County employees for the excess contributions they have previously made to the County's discriminatory pension plan and will continue to make over the next two years as the pension plan's contribution rates are gradually equalized.   The County argues that neither retroactive nor prospective monetary relief is mandatory and that neither form of relief is warranted in this case.

Currently pending before this Court is the EEOC's Motion for Determination on Availability of Retroactive and Prospective Monetary Relief (ECF No. 241).   The parties' submissions have been reviewed, and a hearing on the pending Motion was held before this Court on July 29, 2016.   At that hearing, counsel for the EEOC acknowledged to this Court that the EEOC's delay of eight years in filing this action "trouble[d]" him.   Hearing Tr., at M-72.   This Court finds that the EEOC's eight-year delay in prosecuting this case and its present position on the issue of damages are more than "troubl[ing]" and are in fact untenable.   Counsel for the County have represented that the County's *retroactive* liability alone could total $19 million.   County Response, p. 24, ECF No. 243.   The EEOC has conceded "that the amount of an award of monetary relief in this case could be substantial, that '[r]etroactive liability could be devastating for pension funds,' and that the 'harm would fall on innocent third parties,' including county tax payers, as well as current and retired employees."   Mem. Supp. EEOC Mot., p. 20, ECF No. 241-1 (quoting *City of Los Angeles,*

---

[4] The EEOC's Motion for Injunctive Relief (ECF No. 215) remains pending before this Court.  However, the Joint Consent Order (ECF No. 238) has subsequently "resolve[d] the claims for injunctive relief sought by the EEOC."   Joint Consent Order, p. 6, ECF No. 238.  Accordingly, the EEOC's Motion for Injunctive Relief (ECF No. 215) is now MOOT.

*Dep't of Water & Power v. Manhart*, 435 U.S. 702, 722–23 (1978)).  For the reasons stated herein, the EEOC's Motion for Determination on Availability of Retroactive and Prospective Monetary Relief (ECF No. 241) is DENIED.   Neither retroactive nor prospective monetary relief is mandatory under the Age Discrimination in Employment Act ("ADEA") and, under the circumstances of this case, neither form of relief is appropriate. Even if retroactive monetary relief were mandatory, a closer question than prospective relief, this Court would still decline to award retroactive relief in this case due to the EEOC's unreasonable delay in pursuing its claims.  Accordingly, neither retroactive nor prospective monetary relief is available in this case.[5]  As a result of the Joint Consent Order (ECF No. 238), there are no further issues in this case.  After over seventeen years, this matter is now concluded.

## BACKGROUND

The facts of this case are set forth fully in *EEOC v. Baltimore Cty.*, 747 F.3d 267, 270 (4th Cir. 2014); *EEOC v. Baltimore Cty.*, No. L-07-2500, 2012 WL 5077631, at *1 (D. Md. Oct. 17, 2012); and *EEOC v. Baltimore Cty.*, 593 F. Supp. 2d 797, 799 (D. Md. 2009).

In 1945, Defendant Baltimore County ("Defendant" or the "County") established a mandatory Employee Retirement System (the "pension plan" or "ERS") for all "general"

---

[5] Also pending before this Court is the County's Motion for Leave to File Surreply (ECF No. 245).  A party moving for leave to file a surreply must show a need for a surreply.  *Aguilar v. LR Coin Laundromat, Inc.*, No. RDB-11-02352, 2012 WL 1569552, at *3 (D. Md. May 2, 2012).  A court may permit a plaintiff to file a surreply if "a defendant raises new legal issues or new theories in its reply brief." *MTB Servs., Inc. v. Tuckman-Barbee Const. Co.*, No. RDB-12-2109, 2013 WL 1224484, *6 (D. Md. Mar. 26, 2013) (citing *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 862 (D. Md. 2009)); *see also Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003).  Here, the EEOC raised no new arguments in its Reply brief.  In fact, the County has not claimed that the EEOC did raise new arguments in its Reply.  The County contends only "that a number of EEOC's contentions in its Reply require a written response by the County."  Mot. for Leave to File Surreply, p. 1, ECF No. 245.  Accordingly, the County's Motion for Leave to File Surreply (ECF No. 245) is DENIED.

County employees, under which employees were eligible to retire and receive pension benefits at age 65, regardless of their length of employment. *EEOC v. Baltimore Cty.*, 747 F.3d 267, 270 (4th Cir. 2014). The County planned to fund half of the ERS on its own and relied on employee contributions to fund the other half. *Id.* The County required employees to contribute to the ERS over the course of their employment at contribution rates calculated by the County's actuarial firm, Buck Consultants. *Id.*

To ensure that employee contributions were sufficient to fund the Plan, Buck Consultants "based its calculations for employee contribution rates on the number of years that an employee would contribute to the plan before being eligible to retire at age 65." *Id.* "Using the retirement age of 65, Buck ultimately concluded that older employees who enrolled in the plan should contribute a higher percentage of their salaries, because their contributions would earn interest for fewer years than the younger employees' contributions." *Id.* The County adopted the Buck Consultants calculations and, accordingly, "the older that an employee was at the time of enrollment [in the ERS], the higher the rate that the employee was required to contribute." *Id.*

The County modified the terms of the ERS several times. Most notably, in 1973 "[t]he County . . . added an alternative term of retirement eligibility that permitted general employees to retire after 30 years of service irrespective of their age."[6] *Id.* The County lowered the employee contribution rates once in 1977 "based on expected increases to the rate of return on invested contributions." *Id.* at 271. However, "[t]his reduction did not

---

[6] "Correctional officers later became eligible to retire after only 20 years of service, regardless of age, or at age 65 with 5 years of service." *Id.*

alter the fact that rates were based on an employee's age at the time of plan enrollment and were higher for older employees." *Id.*

"In 1999 and 2000, two County correctional officers, Wayne A. Lee and Richard J. Bosse, Sr., aged 51 and 64, respectively, filed charges of discrimination with the EEOC alleging that the County's plan and disparate contribution rates discriminated against them based on their ages." *Id.* The County has indicated that it "denied the charges and supplied EEOC with all the information it requested, including the cost justification from its actuary for the employee contribution rates." County Response, p. 5, ECF No. 243 (citing Joint Appendix 321-403). However, "[a]fter an unexplained hiatus of 5 and ½ years, on March 6, 2006, the EEOC issued Determination Letters finding that the County's retirement system violated the ADEA." *Id.* (citing Joint Appendix 72-75).

The parties were unsuccessful in reaching a conciliation agreement, and the EEOC filed the present action in 2007—eight years after the first charge of discrimination was filed.[7] *See generally* Am. Compl., ECF No. 57. The EEOC has alleged that "[since] at least January 1, 1996, [the] County has engaged in unlawful employment practices by requiring Wayne A. Lee, Richard J. Bosse, and a class of similarly situated [County employees at least forty years of age] to pay higher contributions than those paid by younger individuals to Defendant's pension plan," in violation of 29 U.S.C. §§ 623(a)(1) & (i)(1). *Id.* at ¶ 14.

---

[7] The County previously asserted the defense of laches with respect to this delay in a motion to dismiss the EEOC's claims. Judge Legg of this Court held that the delay did not justify dismissal of this suit, but left open the application of laches in the damages phase of this case. *See* Mem., p. 8-9, ECF No. 78.

On January 21, 2009, Judge Benson E. Legg[8] of this Court granted the County's Motion for Summary Judgment and ordered that this case be closed. *See EEOC v. Baltimore Cty., et al.*, 593 F. Supp. 2d 797 (D. Md. 2009). Judge Legg reasoned that "the ADEA does not prohibit employer actions when the motivating factor is something other than the employee's age." *Baltimore Cty.*, 593 F. Supp. 2d at 800 (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993)). Judge Legg concluded that the County's contribution rates did not violate the ADEA because they were "actually motivated not by age, but by the pension status—i.e. the number of years until retirement eligibility—of older new-hires." *Id.* Furthermore, Judge Legg analogized the present case to the Supreme Court's decision in *Kentucky Retirement Sys. v. EEOC*, 554 U.S. 135 (2008), in which the Court held that "[w]here an employer adopts a pension plan that includes age as a factor, and that employer then treats employees differently based on pension status, a plaintiff, to state a disparate treatment claim under the ADEA, must adduce sufficient evidence to show that the differential treatment was 'actually motivated' by age, not pension status." *Id.* at 801. Judge Legg held that the factors underlying the Supreme Court's decision in *Kentucky Retirement Systems* "appl[ied] equally to the instant situation," and, accordingly, concluded that the County had not violated the ADEA. *Id.* at 802.

The EEOC argued that the contribution scheme was invalid under the Supreme Court's decisions in *Ariz. Governing Comm. v. Norris*, 463 U.S. 1073 (1983) and *Los Angeles Dep't of Water and Power v. Manhart*, 435 U.S. 702 (1978), two Supreme Court cases invalidating retirement plans under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

---

[8] This case was reassigned to the undersigned Judge Richard D. Bennett on February 7, 2013, upon Judge Legg's retirement from this Court.

U.S.C. § 2000e, *et seq*., "that paid equal retirement benefits to men and women of the same age, seniority, and salary, but required female employees to make larger monthly contributions."[9]  *Id.* at 802.  However, Judge Legg distinguished *Manhart* and *Norris* from the present case on the grounds that "those decisions involved situations where an employer facially discriminated against its employees on the basis of sex, a protected category."  *Id.* "In contrast," he concluded, "Baltimore County's system is based not on age—a protected category—but on the number of years an employee has until reaching retirement age."  *Id.*

The United States Court of Appeals for the Fourth Circuit subsequently vacated Judge Legg's ruling, holding that a genuine issue of material fact remained as to whether the County's "contribution rates [were] justified by permissible financial considerations."  *EEOC v. Baltimore Cty.*, 385 F. App'x 322, 325 (4th Cir. 2010).  The Court reasoned as follows:

> [U]nder the express terms of the ERS, two new-hires with the same number of years until retirement age, and therefore the same time value of money, can be required to pay different contributions into the ERS. For example, if a twenty-year-old new-hire and a forty-year-old new-hire enroll in the ERS as correctional officers at the same time, they have the same number of years until retirement eligibility. However, the forty-year-old must contribute 5.57% of his annual salary while the twenty-year-old need only contribute 4.42%. This disparity is not justified by the time value of money because both employees contribute for the same twenty years.

Accordingly, the Fourth Circuit remanded this case for further proceedings consistent with its opinion.  *Id.* at 326.  On remand, Judge Legg proceeded to grant partial summary judgment for the EEOC on the issue of liability.  *EEOC v. Baltimore Cty.*, No. L-07-2500, 2012 WL 5077631, at *1 (D. Md. Oct. 17, 2012).  He characterized "[t]he problem identified

---

[9] The Supreme Court held in both *Manhart* and *Norris* that, although the pension funds at issue had violated Title VII, retroactive monetary damages would not be awarded.  As discussed *infra*, the EEOC now seeks to distinguish *Manhart* and *Norris*, arguing that those cases are not persuasive on the issue of damages because they were Title VII cases as opposed to ADEA cases.

by the Fourth Circuit" as "an unintended consequence, resulting from the interaction of two separate and independently lawful provisions of the County Code enacted decades apart." *Baltimore Cty.*, 2012 WL 5077631 at *3.  Judge Legg observed the following:

> It is clear from the record that the age-based contribution rates, when put in place in 1945 until modified in 1977, were fully justified by the time value of money rationale identified by this Court in its prior opinion. Using projected years until retirement, Buck calculated the percentage of an employee's pay that would be required to fund approximately one-half of his or her retirement benefit. Because all employees were eligible to retire at age 65, age served as a proxy for years until retirement. Thus, notwithstanding the fact that the ERS nominally based an employee's contribution rate on the age at which he or she was hired, years until retirement was the real determining factor. In 1973 the County, at no additional cost to employees, added a generous early retirement option based on years of service. Such a benefit is explicitly authorized by § 4(l) of the ADEA, which provides that no violation occurs solely because "a defined benefit plan . . . provides for . . . payments that constitute the subsidized portion of an early retirement benefit." 29 U.S.C. § 623(l)(1)(A)(ii)(I). A secondary effect of this provision, however, was to decouple an employee's age from his or her years until retirement. Age of retirement is no longer yoked to chronological age because some employees take early retirement while others do not. *Id.*

Judge Legg concluded that "after the County adopted the early retirement option, the different contribution rates charged to different employees are explained by age rather than pension status." *Id.* at 5.  Therefore, he reasoned, "[p]ension status . . . cannot be the driving factor behind the disparate treatment, which is directly linked to an employee's age." *Id.* Judge Legg held that "because age [was] the 'but-for' cause of the disparate treatment, the ERS violated the ADEA." *Id.* (quoting *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 177 (2009)).  However, Judge Legg granted the County leave to file an interlocutory appeal on the issue of liability, concluding that "the question presented [was] a novel one," and that "the magnitude of the effort [related to the damages phase of the case] counsel[ed] in favor of making certain that the effort is necessary before it is undertaken." Dec. 7, 2012 Letter

Order, p. 4, ECF No. 206.  The Fourth Circuit affirmed Judge Legg's ruling on appeal and remanded this case "for further proceedings to address the issue of damages."  *EEOC v. Baltimore Cty., et al.*, 747 F.3d 267, 274-75 (4th Cir. 2014).

The parties and all six unions ("Union Defendants") representing the County employees participating in the ERS have since agreed to a Joint Consent Order (ECF No. 238), which includes a plan for equalization of pension plan contribution rates over the next two years.  That Joint Consent Order, with respect to the injunctive portion of this case and the equalization of member contribution rates, has now been entered by this Court. However, the Order indicated that the "EEOC intend[ed] to seek retroactive monetary relief from the County for individuals harmed by the pension practice found to be unlawful by this Court, and also intend[ed] to seek prospective monetary relief from the County for employees who may be harmed by the phase-in of age-neutral contribution rates . . . ."  Joint Consent Order, p. 6, ECF No. 238.  This Court subsequently directed the parties to brief the "question of any damages to be awarded either retroactively or prospectively," and a hearing on that question was held before this Court on July 29, 2016.  Letter Order, ECF No. 237.

## ANALYSIS

I.    <u>A Retroactive Award of Compensation for Amounts Owing is Not Mandatory Under the Age Discrimination in Employment Act ("ADEA")</u>

The Equal Employment Opportunity Commission ("EEOC") argues that this Court "must award retroactive relief to Wayne A. Lee, Richard J. Bosse, and the class of similarly situated aggrieved individuals."  Mem. Supp. EEOC Mot., p. 3, ECF No. 241-1.  Specifically, the EEOC requests an award of "amounts owing," *i.e.* "the amounts of contributions of employees age 40 or over, who were required to participate in [Baltimore County's Early

Retirement System ("ERS")], in excess of the amounts they would have contributed if age were not a factor in employee contribution rates."[10] *Id.* at 5.

Section 626 of the Age Discrimination in Employment Act ("ADEA"), the ADEA's enforcement provision, provides the following:

> The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. Any act prohibited under section 623 of this title shall be deemed to be a prohibited act under section 215 of this title. Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided*, That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

29 U.S.C. § 626(b). Additionally, Section 216 of the Fair Labor Standards Act ("FLSA"), incorporated into the ADEA's enforcement provision *supra*[11], provides the following:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without

---

[10] The County defines the period of retroactive relief from 1996 to July 1, 2007, whereas the EEOC defines the period as commencing in 1996 and continuing until a judgment is issued by this Court. Additionally, the parties contest the precise calculation of "amounts owing" for violations of the ADEA. However, this issue is not presently before this Court. If this Court were to have held that retroactive relief was available, the amount of relief would have been calculated at a later time.

[11] Sections 211(b) and 217 of the FLSA are also incorporated into the ADEA's enforcement provision *supra*. However, neither section is applicable to the EEOC's requested relief in this case. *See* 29 U.S.C. § 211(b) (empowering the United States Department of Labor to utilize state and local agency services to carry out its functions under the FLSA); 29 U.S.C. § 217 (authorizing injunctive relief to restrain FLSA violations).

limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.  29 U.S.C. § 216(b).

The EEOC contends that "[t]he [United States] Supreme Court has interpreted these provisions as depriving the courts of discretion in awarding compensation for monetary harm resulting from an ADEA violation."  Mem. Supp. EEOC Mot., p. 3, ECF No. 241-1. The EEOC relies primarily on *Lorillard v. Pons*, 434 U.S. 575 (1978), in which the Supreme Court held that "in a private action under the ADEA a trial by jury [is] available where sought by one of the parties."  *Lorillard*, 434 U.S. at 585.  In reaching that conclusion, the Supreme Court in *Lorrilard* compared the plain language of the ADEA's enforcement provisions to the enforcement provisions of the FLSA, under which the "right to a jury trial in private actions" was "well established," and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, "which petitioner [Lorillard] maintain[ed] d[id] not provide for jury trials."  *Id.* at 580-585.  The Court ultimately concluded that "by directing that actions for lost wages under the ADEA be treated as actions for unpaid minimum wages or overtime compensation under the FLSA . . . Congress dictated that the jury trial right then available to enforce that FLSA liability would also be available in private actions under the ADEA."  *Id.* at 582-83.  Additionally, the Court observed that "[t]he word 'legal' is a term of art: [i]n cases in which legal relief is available and legal rights are determined, the Seventh Amendment provides a right to jury trial."  *Id.* at 583 (citing Curtis v. Loether, 415 U.S. 189, 195-96 (1974)).  Accordingly, the Court inferred that "by providing specifically for 'legal' relief" under the ADEA, "Congress . . . intended that there would be a jury trial on demand to 'enforc[e] . . . liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation.' "  *Id.* (quoting 29 U.S.C. § 626(b)).

The Supreme Court identified "significant differences" between "the remedial provisions" of Title VII and the ADEA. *Id.* at 584. While "Congress specifically provided for both 'legal and equitable relief' in the ADEA, "legal" relief was "not authorize[d] . . . in so many words under Title VII." *Id.* Additionally, the Court observed that "the ADEA incorporates the FLSA provision that employers 'shall be liable' for amounts deemed unpaid minimum wages or overtime compensation, while under Title VII, the availability of backpay is a matter of equitable discretion." *Id.* at 584. Finally, "rather than adopting the procedures of Title VII for ADEA actions, Congress rejected that course in favor of incorporating the FLSA procedures even while adopting Title VII's substantive prohibitions." *Id.* at 584-85. Therefore, the Court concluded that "even if [Lorrilard] is correct that Congress did not intend there to be jury trials under Title VII, that fact sheds no light on congressional intent under the ADEA." *Id.* at 585.

The EEOC further contends that "[t]he Fourth Circuit has likewise ruled that monetary relief under the ADEA is a mandatory legal remedy." Mem. Supp. EEOC Mot., p. 5, ECF No. 241-1. The EEOC cites *Loveless v. John's Ford, Inc.*, 232 F. App'x 229, 239 (4th Cir. 2007) (unpublished) (per curiam) (concluding that "a liquidated damages award [w]as mandatory . . . where [the plaintiff was] a prevailing plaintiff relying on a jury finding of a willful violation of the ADEA by [his employer]."); *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 964 (4th Cir. 1985) ("The 'amounts owing' under the ADEA, § 626(b) [including 'job-related benefits'] are legal damages, unlike the equitable remedies directing employment, reinstatement and promotion."); and *Sailor v. Hubbell, Inc.*, 4 F.3d 323, 325–26 (4th Cir. 1993) ("[A] back pay award given under the ADEA is a legal remedy.").

13

Contrary to the EEOC's representations, no court has held that a retroactive award of compensation for amounts owing is mandatory under the Age Discrimination in Employment Act ("ADEA")[12].  The Fourth Circuit in *Loveless* concluded only that *liquidated damages*[13] were mandatory "in th[at] case" because a jury had determined that the plaintiff, Loveless, was discharged "on the basis of his age" and that his employer's "conduct was a *willful* violation of the ADEA."  *See Loveless*, 232 F. App'x at 239-240 (emphasis added). "Liquidated damages are available under the ADEA in an amount equal to other damages where the employer is guilty of 'willful violations.' "  *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 967 (4th Cir. 1985) (quoting 29 U.S.C. § 626(b)).  However, the Fourth Circuit in *Loveless* said nothing about whether those "other damages," including "back pay" or retroactive "amounts owing" are mandatory.  At this Court's July 29, 2016 hearing, counsel for the EEOC posed the question, "[h]ow could liquidated damages be mandatory if back pay isn't?"  Hearing Tr., at M-36.  He argued that "[i]t doesn't make any sense logically for one to be mandatory and the other not to be," although he cited no authority in support of that position.  *Id.*  While the Fourth Circuit did address "amounts owing" and "back pay" in *Fariss* and *Sailor*, the Court concluded only that they were "legal," as opposed to "equitable," remedies.  *See Fariss*, 769 F.2d at 964; *Sailor*, 4 F.3d at 325–26.  Here, Defendant Baltimore

---

[12] On the contrary, at least one United States District Court has held that courts have "discretion with respect to all relief, including backpay, under 29 U.S.C. § 626(b)."  *Altman v. Stevens Fashion Fabrics*, 441 F. Supp. 1318, 1322, n. 4 (N.D. Cal. 1977).  The case cited by the *Altman* court for that proposition, *Morelock v. NCR Corp.*, 546 F.2d 682, 689 (6th Cir. 1976), was subsequently vacated by the United States Supreme Court in light of *Lorrilard* because it had held that no right to a jury trial existed in an ADEA action.  *See Morelock*, 435 U.S. 911 (1978).  However, *Lorrilard* did not hold that retroactive relief is mandatory under the ADEA.

[13] The EEOC also seeks "liquidated damages," but correctly notes that "the appropriateness of such damages cannot be determined until the factual issue of willfulness is determined by a jury."  *Id.* at 4, n. 3; *see Loveless v. John's Ford, Inc.*, 232 F. App'x 229, 238 (4th Cir. 2007) ("Under the ADEA, an award of liquidated damages should only be made if a violation of the statute is found to be willful.).

County ("Defendant" or the "County") does not contest that the retroactive monetary relief sought by the EEOC is a "legal" remedy. *See* Cty. Response, p. 3, ECF No. 243. Rather, the County argues that the ADEA's enforcement provisions plainly grant this Court discretion to award " 'such *legal and equitable* relief *as may be appropriate*.' " *Id.* (quoting 29 U.S.C. § 626(b)) (emphasis added).[14]

Likewise, the Supreme Court's decision in *Lorrilard* does not directly support the EEOC's position. The question before the Supreme Court in *Lorrilard* was whether a right to a jury trial existed in private actions brought under the ADEA, not whether any remedy available under the ADEA was or was not mandatory. *See Lorrilard*, 434 U.S. at 585. While the Court did contrast the ADEA's enforcement provisions with Title VII's enforcement provisions, under which "backpay is a matter of equitable discretion," the Court did not hold that a retroactive award of compensation for amounts owing is mandatory under the ADEA. *See id.* at 584. Additionally, the Court contrasted sections of the ADEA and FLSA, under which back pay is mandatory, observing the following:

> [I[n enacting the ADEA, Congress exhibited both a detailed knowledge of the FLSA provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation. For example, in construing the enforcement sections of the FLSA, the courts had consistently declared that injunctive relief was not available in suits by private individuals but only in suits by the Secretary. *Powell v. Washington Post Co.*, 105 U.S. App. D.C. 374, 267 F.2d 651 (1959); *Roberg v. Henry Phipps Estate*, 156 F.2d 958, 963 (CA2 1946); *Bowe v. Judson C. Burns, Inc.*, 137 F.2d 37 (CA3 1943). Congress made plain its decision to follow a different course in the ADEA by expressly permitting "such . . . equitable relief as may be appropriate to effectuate the purposes of [the

---

[14] Furthermore, none of the cases cited by the EEOC involved a situation where, as here, the parties had already reached a settlement agreement providing for injunctive relief in a manner agreeable to all parties. As discussed *supra*, the parties and all six Union Defendants have already agreed to a Joint Consent Order (ECF No. 238), which includes a plan for equalization of pension plan contribution rates over the next two years. The EEOC now seeks additional relief in the form of retroactive and prospective monetary damages.

> ADEA] including without limitation judgments compelling employment, reinstatement or promotion" "in any action brought to enforce" the Act. § 7(b), 29 U.S.C. § 626(b) (emphasis added). Similarly, while incorporating into the ADEA the FLSA provisions authorizing awards of liquidated damages, Congress altered the circumstances under which such awards would be available in ADEA actions by mandating that such damages be awarded only where the violation of the ADEA is willful. Finally, Congress expressly declined to incorporate into the ADEA the criminal penalties established for violations of the FLSA.

*Lorillard*, 434 U.S. 575, 581–82 (1978).  Furthermore, the Supreme Court specifically cited the language in the ADEA's enforcement provision that the County claims grants this court discretion to award retroactive relief: "[I]n any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief *as may be appropriate* to effectuate the purposes of this chapter."  *Id.* at 579, n. 5.  The Supreme Court has not indicated that its holding in *Lorrilard* invalidated, or in any way interfered with, this provision.

On the contrary, several United States Circuit Courts of Appeal have subsequently confirmed that the ADEA grants courts broad discretion to award appropriate remedies for ADEA violations.  The United States Court of Appeals for the Second Circuit in *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727–28 (2d Cir. 1984) observed the following:

> While the enforcement provisions of the ADEA were generally modeled after the remedies in the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 211(b), 216, and 217, which were incorporated by reference into the ADEA's § 626(b), *see Lorillard v. Pons*, 434 U.S. 575, 577–78 (1978), congress did more than merely incorporate that statute's back pay and limited injunctive remedies. It expressly authorized the district courts to grant an ADEA claimant
>
>> such legal or equitable relief as may be appropriate to effectuate the purposes of [the act], including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts [owing to a person as a result of the violation of the ADEA]. 29 U.S.C. § 626(b).

> Guided by this broad grant of remedial authority, we have previously encouraged district judges in this circuit to fashion remedies designed to ensure that victims of age discrimination are made whole. *Geller v. Markham*, 635 F.2d 1027, 1036 (2d Cir.1980), *cert. denied*, 451 U.S. 945 (1981).

*Whittlesey*, 742 F.2d at 727–28. Similarly, the United States Court of Appeals for the Eleventh Circuit concluded as follows in *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1561 (11th Cir. 1988):

> Once a verdict has been rendered in favor of an ADEA plaintiff, Sec. 7(b), 29 U.S.C. Sec. 626(b), authorizes the district court to "grant such legal or equitable relief as may be appropriate to effectuate the purposes of [the Act], including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts [owing a person as a result of the violation of the ADEA]." This is a broad grant of remedial authority. [citing *Whittlesey,* 742 F.2d at 727]. The selection of remedies is a matter of the trial court's discretion, so long as the relief granted is consistent with the purposes of the ADEA.

*Castle*, 837 F.2d at 1561; *see also Leftwich v. Harris-Stowe State Coll.*, 702 F.2d 686, 693 (8th Cir. 1983) ("The ADEA provides legal and equitable remedies . . . . The Act affords the district court discretion to fashion appropriate relief, and its remedy can be set aside only if that discretion is abused); *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985) ("[T]he selection of remedies for an ADEA violation is a matter of the trial court's discretion, so long as the relief granted is consistent with the purposes of the Act [citing *Leftwich*, 702 F.2d at 693].). The EEOC has cited no case holding that this Court lacks discretion to deny retroactive relief for amounts owing, nor has the EEOC cited any case in which a retroactive award was an appropriate remedy for a discriminatory pension plan.

The parties have only cited three cases where, like here, an employer's pension plan was found to violate a federal anti-discrimination statute. *See Florida v. Long*, 487 U.S. 223 (1988); *Arizona Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463

U.S. 1073 (1983); *City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702 (1978). Although all three cases involved violations of Title VII of the Civil Rights Act of 1964, as opposed to the ADEA violation at issue here[15], their unique status as *pension plan* cases was central to those opinions. None of those cases held that retroactive monetary relief was mandatory. On the contrary, they emphasized that retroactive awards have the capacity to devastate pension systems. *See, e.g., Manhart*, 435 U.S. at 722 ("Courts have [] shown sensitivity to the special dangers of retroactive Title VII awards in this field . . . . Retroactive liability could be devastating for a pension fund. The harm would fall in large part on innocent third parties."); *Norris*, 463 U.S. at 1106-07 ("As in *Manhart*, holding employers liable retroactively would have devastating results . . . the cost would fall on the state of Arizona."); *Long*, 487 U.S. at 236 ("Retroactive awards, applied to every employer-operated pension plan that did not anticipate our decision, would impose financial costs that would threaten the security of both the funds and their beneficiaries."). All three cases ultimately held that retroactive relief was inappropriate.[16]

---

[15] The EEOC objects that these Title VII cases are not persuasive as to the present ADEA case because "[i]n all three cases, the Supreme Court stressed that a court had discretion not to order" retroactive relief whereas "a court has no discretion in ADEA cases to deny retroactive monetary relief." Mem. Supp. EEOC Mot., p. 9, ECF No. 241-1. However, as explained *supra*, the EEOC has failed to cite any authority holding that retroactive monetary awards are mandatory relief in ADEA cases. The Supreme Court specifically stated in *Manhart* that the rules governing pension funds "should not be applied retroactively unless the legislature has plainly commanded that result." *Manhart*, 435 U.S. at 721. Furthermore, courts have routinely applied Title VII doctrine to ADEA cases, even with respect to damages. *See, e.g., Whittlesey*, 742 F.2d at 728 ("District courts have had considerable experience with damages for future wages in . . . front pay cases under Title VII . . . . We are confident they can adapt that wisdom to the special needs of ADEA cases . . . .").

[16] As discussed *infra*, counsel for the County have represented that the County's *retroactive* liability alone could be $19 million. County Response, p. 24, ECF No. 243. The EEOC concedes that a damages award would be "substantial," "could be devastating" for the pension fund, and would harm "innocent third parties . . . including county tax payers, as well as current and retired employees." Mem. Supp. EEOC Mot., p. 20, ECF No. 241-1.

No court has interpreted the enforcement provision of the Age Discrimination in Employment Act, 29 U.S.C. § 626(b), as requiring that retroactive monetary relief be awarded for ADEA violations.   The United States Supreme Court has stated that the rules governing pension funds "should not be applied retroactively unless the legislature has plainly commanded that result."   *Manhart*, 435 U.S. at 721.   The ADEA's enforcement provision provides that "court[s] shall have jurisdiction to grant such legal or equitable relief as may be appropriate . . . ."   29 U.S.C. § 626(b).   This broad grant of authority has been repeatedly confirmed by the United States Circuit Courts of Appeal.   *See, e.g., Whittlesey,* 742 F.2d at 727–28; *Castle,* 837 F.2d at 1561.

Additionally, none of the three United States Supreme Court cases to consider a retroactive monetary award where an employer's pension fund violated a federal anti-discrimination statute have held that a retroactive award was mandatory.   On the contrary, all three cases have held that a retroactive monetary award was not appropriate, owing to the unique burdens that retroactive awards place on pension plans.   *See Long*, 487 U.S. 223; *Norris*, 463 U.S. 1073; *Manhart*, 435 U.S. 702.   For these reasons, a retroactive award of compensation for amounts owing is not mandatory under the Age Discrimination in Employment Act.   However, even if retroactive relief were mandatory under the ADEA, this Court would still not award retroactive relief in this case due to the EEOC's unreasonable delay in pursuing its claims.   As discussed *infra*, the doctrine of laches authorizes a court to bar a plaintiff from recovering damages where that plaintiff has unreasonably delayed prosecution of his or her claims and has prejudiced the defending party.   Moreover, the United States Supreme Court has specifically held in *Occidental Life Ins. Co. of California v.*

19

*EEOC*, 432 U.S. 355, 373 (1977) that federal courts have the power to "restrict or even deny

backpay relief" where the EEOC has "inordinate[ly]" delayed filing the action.

II.   A Prospective Award of Compensation for Amounts Owing is Not Mandatory
      Under the Age Discrimination in Employment Act ("ADEA")

In addition to retroactive monetary relief, the EEOC also requests that this Court

"award prospective monetary relief to the class of aggrieved individuals who will continue to

pay at discriminatory rates until the age-neutral rates are ultimately phased in."  Mem. Supp.

EEOC Mot., p. 6, ECF No. 241-1.  The EEOC argues that this prospective relief "must be

considered 'amounts owing' . . . and thus an element of mandatory relief."[17]  *Id.*

As explained *supra*, the EEOC has failed to demonstrate that retroactive monetary

relief is mandatory under the ADEA.  The ADEA's enforcement provision grants this Court

discretion to award "such legal or equitable relief as may be appropriate to effectuate the

purposes of this chapter . . . ."  29 U.S.C. § 626(b).  Courts have characterized this provision

as a "broad grant of remedial authority," *Whittlesey*, 742 F.2d at 727–28, and "a matter of the

trial court's discretion," *Goldstein*, 758 F.2d at 1448.  As to prospective relief, the United

States Court of Appeals for the Fourth Circuit has specifically concluded that "whether front

pay is to be made available to a plaintiff under the ADEA is a matter left to the discretion of

the trial judge who must consider a host of factors."  *Duke v. Uniroyal Inc.*, 928 F.2d 1413,

1424 (4th Cir. 1991); *see also Sailor v. Hubbell, Inc.*, 4 F.3d 323, 325–26 (4th Cir. 1993)

("[I]njunction, reinstatement, and front pay are equitable forms of relief under the ADEA.");

*Loveless*, 232 F. App'x at 238 ("Whether an award of front pay should be made . . . rests

---

[17] EEOC defines the period of prospective relief as commencing on the date of judgment and terminating on
July 1, 2018.  EEOC Reply, p. 2, n. 1, ECF No. 244.

squarely within the trial court's discretion").   Other United States Circuit Courts of Appeal have held the same.   *See Goldstein*, 758 F.2d at 1448–49 ("an award of front pay—i.e., prospective lost earnings—*may be an appropriate remedy* in an age discrimination suit . . . .") (emphasis added); *Whittlesey*, 742 F.2d at 728 (The ADEA's "broad grant of remedial authority" . . . "*permits* a district court, in appropriate circumstances, to award front pay to victims of age discrimination.") (emphasis added).

The plaintiffs in *Duke v. Uniroyal, Inc.* sued their former employer, alleging that they were discharged on the basis of their age in violation of the ADEA.   *Duke*, 928 F.2d at 1416. The United States District Court for the Eastern District of North Carolina "submitted to the jury the issues of whether front pay [was] to be awarded and the amount."   *Id.* at 1421. Two of the plaintiffs, Duke and Fox, were awarded back pay, and "the jury made separate awards of front pay for anticipated lost income and benefits from the date of trial until retirement."   *Id.* at 1423.   On appeal, the United States Court of Appeals for the Fourth Circuit vacated the jury verdict with respect to front pay and remanded the case "for the court to reconsider the total equitable remedies available . . . including the possibilities of reinstatement, front pay, a combination, or, if appropriate, no remedy."   *Id.* at 1424-25.   The Fourth Circuit instructed the trial court to "consider a host of factors, including whether reinstatement [was] practical."   *Id.* at 1424.   The Court further remarked that "[t]he appropriate method for addressing the difficult question of providing a remedy which anticipates potential future losses requires an analysis of all the circumstances existing at the time of trial for the purpose of tailoring a blend of remedies that is most likely to make the plaintiff whole. The beginning point under the ADEA for preventing future loss is

reinstatement." *Id.* at 1423.  Although the plaintiffs in this case do not allege wrongful termination and reinstatement has not been requested, this Court has followed the Fourth Circuit's guidance *infra* by weighing the EEOC's request for prospective monetary relief against the "total equitable remedies available" and "all the circumstances existing at the time of trial."  Specifically, this Court concludes that prospective relief is not appropriate in part because the Union Defendants have bargained for the County's contribution rates on behalf of County employees since the 1970s and because the EEOC, the County, and the Union Defendants have already reached a settlement in this case with respect to injunctive relief, under which contribution rates will be equalized over the next two years.  Additionally, this Court has considered *infra* a "host of factors" specifically relevant to pension plan cases, identified by the Supreme Court in *Manhart*, *Norris*, and *Long*, all of which suggest that prospective relief is not warranted in this case.

The EEOC objects that the requested prospective relief is not "front pay" because it is "not a remedy for past discrimination for 'potential' loss, but rather for current, on-going age discrimination that will certainly persist until July 1, 2018, by operation of the Joint Consent Order."  Mem. Supp. EEOC Mot., p. 6, ECF No. 241-1.  The EEOC contends that "[t]he amounts owing between now and July 2018 are readily calculable, without need for speculation concerning lost future earnings or the possibility of windfall payments."  *Id.* However, the EEOC fails to cite an authority indicating that prospective relief is mandatory, and not discretionary like front pay, simply because the amounts requested are "readily calculable" as opposed to "potential."  On the contrary, front pay is not always speculative, but can be used to fill in a finite period of lost wages.  The Fourth Circuit specifically

observed in *Duke* that "front pay . . . can be awarded to complement a deferred order of reinstatement or to bridge a time when the court concludes the plaintiff is reasonably likely to obtain other employment . . . [i]f a plaintiff is close to retirement, front pay may be the only practical approach." *Duke*, 928 F.2d at 1424.

Furthermore, this Court has identified several authorities which suggest that "front pay" and "prospective relief" are one in the same. *See Vergès v. Va. Highlands Cmty. College*, No. 1:16CV00005, 2016 U.S. Dist. LEXIS 68546, at *6 (W.D. Va. May 25, 2016) ("Count II of the Complaint asserts a claim against Couch under 42 U.S.C. § 1983 for violation of the ADEA. Count II seeks *prospective injunctive relief* in the form of reinstatement or *front pay* in lieu of reinstatement, as well as attorneys' fees, costs, and expert witness fees.") (emphasis added); 8-103E Business Organizations with Tax Planning § 103E.09 (2015) ("*Front pay* is a *prospective monetary award* of future lost earnings that applies whenever reinstatement is inappropriate or infeasible.") (emphasis added); 7-F17 Civil Rights Actions § F17.07 (2015) ("I instruct you that if the plaintiff persuades you that the defendant has violated the ADEA you may award the plaintiff *prospective damages*, sometimes called *front pay*."). For these reasons, a prospective award of compensation for amounts owing is not mandatory under the Age Discrimination in Employment Act.

III. <u>Neither Retroactive Nor Prospective Monetary Relief is Available in this Case</u>

    A. <u>The Factors Identified in the United States Supreme Court's Pension Fund Cases—*Manhart, Norris,* and *Long*—Counsel Against a Monetary Award</u>

As discussed *supra*, the parties have cited only three cases discussing the availability of retroactive relief where an employer's pension fund contribution scheme has been found to violate a federal anti-discrimination statute. *See Manhart*, 435 U.S. 702; *Norris*, 463 U.S. 1073;

*Long*, 487 U.S. 223.[18]   In all three cases, the United States Supreme Court has held that

retroactive relief is not appropriate.   The United States Court of Appeals for the Ninth

Circuit has characterized these cases as indicating a "clear Supreme Court disapproval of

retroactive relief in pension cases."   *Retired Pub. Employees' Ass'n of Cal. Chapter 22 v. State of*

*Cal.*, 799 F.2d 511, 514 (9th Cir. 1986).   The parties have cited no case, nor has this Court

located one, addressing the availability of *prospective relief* for the period of time during which

an employee contribution equalization plan is implemented.[19]   However, as discussed *supra*,

this Court has *discretion* "to grant [either form of relief] as may be appropriate" to enforce the

ADEA.   *See* 29 U.S.C. § 626(b).

In *City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702 (1978), the

United States Supreme Court held that the Los Angeles Department of Water and Power's

requirement that female employees make larger contributions to its pension fund than male

employees violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e,

*et seq.   See Manhart*, 435 U.S. at 704-717.   Although the Department's contribution rates were

based on the simple fact that women live longer than men, the Court concluded that "[a]n

employment practice that requires 2,000 individuals to contribute more money into a fund

---

[18] The EEOC objects that all three cases involved Title VII violations, as opposed to ADEA violations.   *See* Mem. Supp. EEOC Mot., p. 9, ECF No. 241-1.   However, the *Manhart*, *Norris*, and *Long* opinions are more accurately classified as *pension plan* cases than Title VII cases because their holdings were based, in large part, on public policy concerns that weigh against awarding retroactive monetary relief in any pension fund case. As discussed *supra*, the EEOC has failed to cite any authority holding that this Court is prohibited from taking those important public policy concerns into account in determining the availability of retroactive and prospective relief in this ADEA case.

[19] As discussed *supra*, the County, the EEOC, and all six Union Defendants have agreed to a plan for the gradual equalization of employee contribution rates over the next two years.   *See* Joint Consent Order Regarding Injunctive Relief, ECF No. 238.   However, the EEOC has additionally requested "prospective monetary relief [for] the class of aggrieved individuals who will continue to pay at discriminatory rates until the age-neutral rates are ultimately phased in."   Mem. Supp. EEOC Mot., p. 6, ECF No. 241-1.

than 10,000 other employees simply because each of them is a woman, rather than a man, is in direct conflict with both the language and the policy of [Title VII]." *Id.* at 711.

However, the Supreme Court in *Manhart* held that an "award of retroactive relief to the entire class of female employees and retirees" was not appropriate. *Id.* at 718-723. While the Department's contribution rates were ultimately found to violate Title VII, the Supreme Court acknowledged "that conscientious and intelligent administrators of pension funds, who did not have the benefit of the extensive briefs and arguments presented to [the Court], may well have assumed that a program like the Department's was entirely lawful." *Id.* at 720. "The courts had been silent on the question, and the administrative agencies had conflicting views . . . [a]s commentators ha[d] noted, pension administrators could reasonably have thought it unfair-or even illegal-to make male employees shoulder more than their 'actuarial share' of the pension burden." *Id.* Accordingly, the Supreme Court interpreted the Department's failure to correct its pension fund contribution scheme as a sign "not of its recalcitrance, but of the problem's complexity." *Id.* Accordingly, the Court concluded that "[t]here [was] no reason to believe that the threat of a backpay award [was] needed to cause other administrators to amend their practices to conform to [its] decision." *Id.* at 720-721.

The Court further noted "the potential impact which changes in rules affecting insurance and pension plans may have on the economy" and observed the following:

> Fifty million Americans participate in retirement plans other than Social Security. The assets held in trust for these employees are vast and growing-more than $400 billion was reserved for retirement benefits at the end of 1976 and reserves are increasing by almost $50 billion a year. These plans, like other forms of insurance depend on the accumulation of large sums to cover contingencies. The amounts set aside are determined by a painstaking assessment of the insurer's likely liability. Risks that the insurer foresees will be included in the calculation of liability, and the rates or contributions

> charged will reflect that calculation. The occurrence of major unforeseen contingencies, however, jeopardizes the insurer's solvency and, ultimately, the insureds' benefits. Drastic changes in the legal rules governing pension and insurance funds, like other unforeseen events, can have this effect. Consequently, the rules that apply to these funds should not be applied retroactively unless the legislature has plainly commanded that result.

*Id.* at 721-22. "Although Title VII [had been] enacted in 1964 [fourteen years prior to the *Manhart* decision]," the Court was sensitive to the fact that "this [was] apparently the first litigation challenging contribution differences based on valid actuarial tables." The Court concluded as follows:

> Retroactive liability could be devastating for a pension fund. The harm would fall in large part on innocent third parties. If, as the courts below apparently contemplated, the plaintiffs' contributions are recovered from the pension fund, the administrators of the fund will be forced to meet unchanged obligations with diminished assets. If the reserve proves inadequate, either the expectations of all retired employees will be disappointed or current employees will be forced to pay not only for their own future security but also for the unanticipated reduction in the contributions of past employees.

*Id.* at 722-23. Accordingly, the Court held that retroactive relief was not appropriate. *Id.*

Five years later, the Supreme Court held in *Arizona Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073 (1983) that the State of Arizona had violated Title VII by offering its employees the option of receiving retirement benefits from one of several companies selected by the State, all of which paid women lower monthly benefits than men who had made the same retirement contributions. *Norris*, 463 U.S. at 1075-86. However, the Court concluded that "this finding of a statutory violation provide[d] no basis for" retroactive relief, which "would be both unprecedented and manifestly unjust." *Id.* at 1105. Even though the *Manhart* decision had placed employers on notice that male-female disparities in pension fund contribution rates violate Title VII, the Court reiterated its

position in *Manhart* that "a retroactive remedy would have had a potentially disruptive

impact on the operation of the employer's pension plan" and concluded that the *Norris* case

"present[ed] no different considerations." *Id.* at 1106.

The Court reasoned as follows:

> *Manhart* did put all employer-operated pension funds on notice that they could
> not "requir[e] that men and women make unequal contributions to [the]
> fund," . . . but it expressly confirmed that an employer could set aside equal
> contributions and let each retiree purchase whatever benefit his or her
> contributions could command on the "open market" . . . . Given this explicit
> limitation, an employer reasonably could have assumed that it would be lawful
> to make available to its employees annuities offered by insurance companies
> on the open market.

> As in *Manhart*, holding employers liable retroactively would have devastating
> results. The holding applies to all employer-sponsored pension plans, and the
> cost of complying with the District Court's award of retroactive relief would
> range from $817 to $1260 million annually for the next 15 to 30 years . . . . In
> this case, the cost would fall on the State of Arizona. Presumably other state
> and local governments also would be affected directly by today's decision.
> Imposing such unanticipated financial burdens would come at a time when
> many States and local governments are struggling to meet substantial fiscal
> deficits. Income, excise and property taxes are being increased. There is no
> justification for this Court, particularly in view of the question left open in
> *Manhart*, to impose this magnitude of burden retroactively on the public.
> Accordingly, liability should be prospective only. *Id.* at 1106-1107 (internal
> citations omitted).

In *Florida v. Long*, 487 U.S. 223 (1988) the United States Supreme Court again

considered whether retroactive relief was available for beneficiaries of the State of Florida's

optional employee pension plan, which was nondiscriminatory as to contributions, but had

provided greater benefits to male beneficiaries than female beneficiaries prior to the Court's

decision in *Norris*. *See Long*, 487 U.S. at 226-28.  The Court announced the following test:

> We have identified three criteria for determining whether retroactive awards
> are appropriate in Title VII pension cases involving the use of sex-based
> actuarial tables . . . . The first is to examine whether the decision established a

27

> new principle of law, focusing, in this context, on whether *Manhart* clearly defined the employer's obligations under Title VII with respect to benefits payments. The second criterion is to test whether retroactive awards are necessary to the operation of Title VII principles by acting to deter deliberate violations or grudging compliance.  The third is to ask whether retroactive liability will produce inequitable results for the States, employers, retirees, and pension funds affected by our decision.

*Id.* at 230.  With respect to the first criteria, the Supreme Court rejected the lower court's position that the *Manhart* decision had "placed Florida on notice that optional pension plans offering sex-based benefits violated Title VII."  *Id.* at 230-233.  The Court concluded that its "references to *contributions*, as distinct from *benefits payments*" and recognition of "the potential for interaction between an employer-operated pension plan and pension plans available in the marketplace" in its *Manhart* opinion "left some doubt regarding [*Manhart*'s] command."  *Id.* at 231.  The Court indicated that it was "[n]ot until *Norris*, decided five years after *Manhart*," that they "address[ed] the matter of unequal benefits payments and the open market exception."  *Id.* at 232.  "Thus, some questions left open by *Manhart* were answered in *Norris*."  *Id.* at 233.  The Court indicated that "[o]ur close division in the later case, however, suggests that application of the earlier law to differential benefits was far from obvious."  *Id.*  "In view of the substantial departure from existing practice that *Manhart* ordered," the Supreme Court concluded that "pension fund administrators could rely with reasonable assurance on its express qualifications and conclude that it was confined to cases of sex-based contributions."  *Id.*  Therefore, "Florida's continuance of the optional plans until the *Norris* decision d[id] not justify imposition of a retroactive award."  *Id.* at 235.

Next, the Supreme Court ruled that "[t]he second and third criteria of retroactivity analysis also support[ed] [its] determination that *Norris*, and not *Manhart*, provides the

appropriate date for determining liability and relief." *Id.* The Court concluded that "retroactivity [was] not required" "to further the purposes of Title VII" because "Florida acted immediately after . . . *Norris* and modified its optional pension plans to provide equal monthly benefits" and because "[t]here [was] no evidence that employers in general ha[d] not complied with the Title VII requirements . . . announced in *Manhart* and extended in *Norris*." *Id.* Finally, the Court concluded, "as in *Manhart* and *Norris*, that the imposition of retroactive liability on the States, local governments, and other employers that offered sex-based pension plans to their employees [was] inequitable." *Id.* Quoting *Manhart*, the Court observed that " 'the rules that apply to these funds should not be applied retroactively unless the legislature has plainly commanded that result' " and "that Congress had, in fact, stressed the importance of 'making only gradual and prospective changes' in the legal rules governing pension plans." *Id.* at 236 (quoting *Manhart*, 435 U.S. at 720-23). The respondents in *Long* argued "that Florida's pension administrators had 'actual notice from internal memoranda and discussions' that the continuation of the sex-based optional pension plans after *Manhart* violated Title VII." *Id.* (citation omitted). However, the Supreme Court rejected this argument, concluding that "the question whether *Manhart* placed employers on notice of Title VII's requirements cannot turn on the internal debates of one pension fund's administrators . . . [and that] [t]he meaning and scope of a decision do not rest on the subjective interpretations of discrete, affected persons and their legal advisers." *Id.* at 237.

Like in *Manhart*, Baltimore County had reason to believe that its pension plan contribution scheme was entirely lawful prior to the determination of liability in the present case. When the County implemented its 30 year early retirement option in 1973, no one

advised the County that adding that option would "decouple" the time value of money from the contribution rates, causing the scheme to violate the ADEA.  In fact, Buck Consultants, the County's actuarial consultant, advised the County in 1988 that the contribution rates did not violate the ADEA.  *See* Joint Appendix 17-19.  Furthermore, in response to the charges of age discrimination filed against the County in 1999 and 2000, the County sought the advice of its actuary, Buck Consultants, who specifically advised the County in August of 2000 that "a bona-fide employee benefit plan does not discriminate against older employees, even if older employees must pay more for their benefit, so long as older employees do not have to bear a greater percentage of the cost of the benefit than a younger employee."  *Id.* at 6-10.  Therefore, like in *Manhart*, there is "no reason to believe that the threat of a backpay award is needed to cause other administrators to amend their practices."  *Manhart*, 435 U.S. at 720-21.  While this Court ultimately held that the County's contribution rates were unlawful, the fund's administrators "did not have the benefit of the extensive briefs and arguments" presented to this Court and "may well have assumed that" their contribution scheme "was entirely lawful."  *Id.* at 720.

In fact, Judge Legg of this Court initially granted summary judgment for the County on the issue of liability in this case.  As discussed *supra*, Judge Legg held that the County's contribution scheme was not unlawful because "the ADEA does not prohibit employer actions when the motivating factor is something other than the employee's age." *Baltimore Cty.*, 593 F. Supp. 2d at 800.  Furthermore, Judge Legg analogized the facts of this case to the Supreme Court's decision in *Kentucky Retirement Sys. v. EEOC*, 554 U.S. 135 (2008), in which the Court held that "[w]here an employer adopts a pension plan that includes age as a

factor, and that employer then treats employees differently based on pension status, a plaintiff, to state a disparate treatment claim under the ADEA, must adduce sufficient evidence to show that the differential treatment was 'actually motivated' by age, not pension status." *Id.* at 801. While the EEOC objects that the Supreme Court's decisions in *Manhart*, *Norris*, and *Long* should have put the County on notice that its contribution scheme was discriminatory, Judge Legg of this Court also distinguished two of those cases in his initial opinion granting summary judgment for the County. While *Manhart* and *Norris* "involved situations where an employer facially discriminated against its employees on the basis of sex," Judge Legg remarked that the "County's system [was] based not on age . . . but on the number of years an employee ha[d] until reaching retirement age." *Id.* at 802.

The issue presented in this case was a novel one[20], as evidenced by its complex history. *See Long*, 487 U.S. at 233 ("[o]ur close division . . . suggests that application of the earlier law to differential benefits was far from obvious.") *Id.* Judge Legg of this Court initially granted summary judgment for the County on the issue of liability, his judgment was vacated by the Fourth Circuit, then Judge Legg granted summary judgment for the EEOC on remand. The EEOC has failed to produce any case, prior to this one, where there was a decoupling of the time value of money concept from contribution rates as the result of the implementation of an employer-funded, early retirement option. *See Manhart*, 435 U.S. at 722 ("Although Title VII [had been] enacted in 1964 [fourteen years prior to the *Manhart*

---

[20] In fact, counsel for the County has represented that "it was Judge Shedd, during oral argument [before] the Fourth Circuit who first raised the early retirement hypothetical that provided the sole basis for Judge Legg's subsequent decision in favor of EEOC. This argument had not been previously raised by EEOC." County Response, p. 37, ECF No. 243.

decision]," the Court was sensitive to the fact that "this [was] apparently the first litigation challenging contribution differences based on valid actuarial tables.")

The EEOC contends that the County should have been on notice of the unlawfulness of its contribution scheme following a 1999 letter from Buck Consultants, indicating concern about the impact of new regulations on its contribution rates. *See* August 24, 1999 Letter, ECF No. 241-2. However, the stated purpose of that letter was to review recent changes in the Internal Revenue Code, "to address several lingering issues," and to provide "a summary of statutory rights." *Id.* Additionally, the letter only discussed "Other Concerns-Age" in three paragraphs, out of eight pages, and never expressly indicated that the rates were illegal or should be calculated. Furthermore, the Supreme Court expressly rejected a similar argument in *Long*. *Long*, 487 U.S. at 237 ("the question whether *Manhart* placed employers on notice of Title VII's requirements cannot turn on the internal debates of one pension fund's administrators . . . [t]he meaning and scope of a decision do not rest on the subjective interpretations of discrete, affected persons and their legal advisers.").

Finally, the Supreme Court in *Manhart*, *Norris*, and *Long* indicated that retroactive awards pose a grave threat to the security of public employer's pension funds. As noted *supra*, the United States Court of Appeals for the Ninth Circuit has characterized these cases as indicating a "clear Supreme Court disapproval of retroactive relief in pension cases." *Retired Pub. Employees' Ass'n of Cal. Chapter 22,* 799 F.2d at 514. "Retroactive liability could be devastating for a pension fund. The harm would fall in large part on innocent third parties." *Manhart*, 435 U.S. at 722-23. The Supreme Court in *Norris* observed that a retroactive award would place "unanticipated financial burdens" on state and local governments, causing injury

to pension plan beneficiaries and even tax payers.  *Norris*, 463 U.S. at 1106-07.  The Court in *Long* specifically made the risk of "inequitable results for the States, employers, retirees, and pension funds affected" an element of its three-part test for determining the appropriateness of retroactive relief.  *Long*, 487 U.S. at 230.

In all three pension cases, the Supreme Court declined to award retroactive relief. Here, counsel for the County have represented that "retroactive liability could be $19 million dollars, a potentially staggering financial blow to ERS and the estimated 9,500 active and 6,000 retired members of the system."  County Response, p. 24, ECF No. 243.  Additionally, the EEOC has acknowledged the following in its Motion: "The EEOC understands that the amount of an award of monetary relief in this case could be substantial, that '[r]etroactive liability could be devastating for pension funds,' and that the 'harm would fall on innocent third parties,' including county tax payers, as well as current and retired employees."  Mem. Supp. EEOC Mot., p. 20, ECF No. 241-1 (quoting *Manhart*, 435 U.S. at 722-23).  "There is no justification for this Court, particularly in view of" the novelty of the issue presented in this case, "to impose this magnitude of burden."  *See Norris*, 463 U.S. at 1106-07. Accordingly, the Supreme Court's decisions in *Manhart*, *Norris*, and *Long* counsel against an award of retroactive or prospective monetary relief in this case.

> B.     <u>The Union Defendants Have Bargained for the County's Pension Fund Contribution Rates Since the 1970s and Have Already Approved a Settlement Agreement in this Case</u>

The actions of the Defendant Unions in this case further weigh in favor of denying retroactive and prospective monetary relief.   There is no dispute that the Union Defendants have bargained for the County's pension plan contribution rates from the 1970s through the

present and in fact "acquiesce[d]" to "or even support[ed]" those rates.  Mem. Supp. EEOC Mot., p. 16, ECF No. 241-1.  Additionally, the parties and all six Union Defendants have approved a plan for the gradual equalization of contribution rates under the County's pension plan.  The terms of that plan have since been incorporated into a Joint Consent Order Regarding Injunctive Relief, signed by this Court on April 26, 2016 (ECF No. 238). At this Court's hearing on the pending Motion, counsel for the County noted the difficulty it faced in reaching any settlement in this case due to the negotiations that had to occur between the County and the six unions representing affected County employees.  *See* Hearing Tr., at M-51.  Counsel for the County also noted that "as part of a negotiation with the union, when unions give up something, they get something back, and that's how it works, and that's what took place here."  *Id.* at M-55.  "[T]o the extent that there was anything given up [by the unions]," counsel for the County represented that "it was recovered in other goodies, if you want to say, that were given as part of the agreement."  *Id.*

The EEOC contends it is not relevant that the unions, on behalf of their County employee members, have negotiated the County's employee plan contribution rates since the 1970s and have, subsequently, entered into a settlement agreement in the present action that they represent is beneficial to their members.  The EEOC relies on the United States Supreme Court's decision in *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), in which the Supreme Court concluded that the EEOC is "the master of its own case [and] may pursue a claim on [an] employee's behalf even after the employee has disavowed any desire to seek relief."  *Waffle House*, 534 U.S. at 291.  The EEOC contends that "[t]his decision makes plain that the EEOC may seek victim-specific relief for all individuals harmed by Defendant's

pension plan—both retroactively and prospectively—regardless of whether the labor unions consented to the discriminatory rates, whether four of the labor unions find it acceptable that the age discriminatory rates will continue for their members until July 2018, or whether any of the labor unions believe compensation is necessary." Mem. Supp. EEOC Mot., p. 16, ECF No. 241-1.

Contrary to the EEOC's representations, the *Waffle House* case stands only for the proposition that a mandatory arbitration agreement between an employee and his employer does not restrict the EEOC from later seeking "victim specific" relief on behalf of that employee for his employer's ADA violations. *Waffle House*, 534 U.S. at 297. The *Waffle House* case involved a single employee rather than a class of union members who had benefitted from negotiated union contracts and a settlement agreement, negotiated by the unions, as we have in this case. In fact, the Supreme Court in *Waffle House* specifically observed that it was "an open question whether a settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC may seek." *Id.* Here, County employees have benefitted from contracts negotiated each year by their unions since the 1970s. Additionally, the County correctly notes that by entering into the Joint Consent Order, "the EEOC has already accomplished the public policy goal of eliminating age discrimination in the Baltimore County pension system." *See* County Response, p. 42, ECF No. 243. The EEOC has cited no authority indicating that the Defendant Unions' actions on behalf of their employee members cannot or should not be considered by this Court in determining the availability of additional retroactive and prospective monetary relief. On the contrary, the United States Court of Appeals for the Fourth Circuit in *Duke v.*

*Uniroyal*, discussed *supra*, has specifically indicated with respect to prospective relief that courts considering a prospective remedy should analyze "all the circumstances existing at the time of trial for the purpose of tailoring a blend of remedies" and should consider "the total equitable remedies available . . . including the possibilities of . . . a combination [or] no remedy." *Duke*, 928 F.2d at 1423-25.  Here, in light of the Union Defendants' bargaining for the County's contribution rates on behalf of County employees since the 1970s and the fact that the Union Defendants have already entered into a settlement agreement in this case providing for injunctive relief, no additional monetary award—whether retroactive or prospective—is warranted.

      C.     <u>The EEOC Has Unreasonably Delayed the Prosecution of this Case</u>

Even if retroactive monetary relief were mandatory under the ADEA, this Court would still decline to award retroactive relief in this case due to the EEOC's unreasonable delay in bringing this suit.  Laches is an affirmative defense to equitable claims, allowable under Rule 8(c) of the Federal Rules of Civil Procedure.  *See White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990).  "Laches imposes on the defendant the ultimate burden of proving '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.' "  *Id.* (quoting *Costello v. United States*, 365 U.S. 265, 282 (1961)).  "[W]hether laches bars an action depends upon the particular circumstances of the case . . . the equitable balancing of a plaintiff's delay with prejudice to a defendant is primarily left to the sound discretion of the trial court."  *Id.*  Even if a defendant "has not been sufficiently prejudiced by [a] delay to warrant the sanction of dismissal of the action," courts "reserve[] the discretion to reduce any excessive back pay liability attributable to the period of

unreasonable delay." *EEOC v. Lockheed Martin Global Telecommunications, Inc.*, 514 F. Supp. 2d 797, 805-806 (D. Md. 2007).

A "lack of diligence . . . exists where the plaintiff delayed inexcusably or unreasonably in filing suit." *White*, 909 F.2d at 102 (quotation omitted). "Prejudice . . . is demonstrated by a disadvantage on the part of the defendant in asserting or establishing a claimed right or some other harm caused by detrimental reliance on the plaintiff's conduct." *Id.* "However, the defendant is aided by the inference of prejudice warranted by the plaintiff's delay." *Id.* "The plaintiff is then to be heard to excuse his apparent laggardness and to prove facts manifesting an absence of actual prejudice." *Id.* (quotation omitted). "Clearly the greater the delay, the less the prejudice required to show laches, and vice versa." *Id.* However, "the defendant is ultimately required to prove prejudice (given the defendant's burden to plead and prove laches under Fed. R. Civ. P. 8(c)) and may either rest on the inference alone or introduce additional evidence. *Id.* (quotation omitted).

Neither the United States Supreme Court nor the United States Court of Appeals for the Fourth Circuit has explicitly decided whether the doctrine of laches may be asserted as an affirmative defense to claims brought by the federal government. *See, e.g., National Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) ("Nor do we have occasion to consider whether the laches defense may be asserted against the EEOC . . . ."). However, the EEOC concedes that "[i]n some cases, the Fourth Circuit has assumed without deciding that the defense may be asserted against the EEOC." Mem. Supp. EEOC Mot., p. 18, ECF No. 241-1 (citing *EEOC v. Navy Federal Credit Union*, 424 F.3d 397 (4th Cir. 1978)). In *Navy Federal Credit Union*, the EEOC brought a retaliation claim against the Defendant Credit Union in

the United States District Court for the Eastern District of Virginia. *Navy*, 424 F.3d at 404. Subsequently, the Credit Union moved for summary judgment both on the merits and on the grounds that laches barred the EEOC's claim. *Id.* at 404-405. The district court granted the Credit Union's motion on both grounds, but the Fourth Circuit vacated that judgment. *Id.* at 411. As to the Credit Union's laches argument, the Fourth Circuit did not hold that the doctrine of laches could not be raised against the EEOC, but rather that the district court had improperly attributed a delay by the Fairfax County Human Rights Commission to the EEOC in that case. *Id.*

Likewise, this Court in *EEOC v. Lockheed Martin Global Telecommunications, Inc.* considered a laches defense raised by Lockheed Martin to an ADEA claim brought by the EEOC. *See Lockheed Martin*, 514 F. Supp. 2d at 801. This Court observed that "[n]o particular period of delay by the EEOC is *per se* invalid," but that the reasonableness of the EEOC's delay depends on the EEOC's reason for the delay." *Id.* (internal quotation omitted). "If the time period is lengthy, the Court should scrutinize carefully any justifications proffered by the EEOC." *Id.* This Court declared that a 30 month delay "between the end of conciliation, and when the EEOC finally filed suit" was "unreasonable." *Id.* at 802-803. This Court objected that the EEOC had "not really explain[ed] the cause for this delay," but "only provide[d] more details about the events that transpired during that time period." *Id.* at 803. The Court noted that "each month the EEOC did not apprise [Lockheed Martin] of its continuing interest in the case likely led [Lockheed Martin] to believe, with increasing certainty, that it had avoided litigation." *Id.* With respect to prejudice, this Court observed that "[t]he potential for increased back pay

liability [was] arguably the most prejudicial aspect of the EEOC's delay." *Id.* at 805.  While this Court ultimately held that Lockheed Martin had not been sufficiently prejudiced to warrant dismissal of the action, it "reserve[d] the discretion to reduce any excessive back pay liability" if the EEOC prevailed on the merits.  *Id.* at 805-806.

As discussed *supra*, charges of age discrimination were initially filed against the County in 1999 and 2000.  The County timely denied these charges and provided the EEOC with all requested information, including its actuary's cost justification for the employee contribution rates.  The County's actuary, Buck Consultants, had advised the County in 1988 that its employee plan contribution rates did not violate the ADEA.  *See* Joint Appendix 17-19.  Furthermore, in response to the charges of age discrimination filed against the County in 1999 and 2000, Buck Consultants issued a letter expressing its understanding that "a bona-fide employee benefit plan does not discriminate against older employees, even if older employees must pay more for their benefit, so long as older employees do not have to bear a greater percentage of the cost of the benefit than a younger employee." *Id.* at 6-10.  With no further inquiry from the EEOC, five and one half years passed until March of 2006 when the EEOC issued a notice that the County's pension plan violated the Age Discrimination in Employment Act of 1967 ("ADEA").  Another year and one half passed before the EEOC brought this action against Baltimore County.

The EEOC's eight-year delay in bringing this suit constitutes an unreasonable delay, far exceeding periods of delay previously deemed unreasonable by this Court and others. *See, e.g., Lockheed Martin*, 514 F. Supp. 2d at 802-803 (30 month delay between end of conciliation and filing of suit); *EEOC v. Dresser Indust., Inc.*, 668 F.2d 1199 (11th Cir. 1982)

(five year and eight month delay between the charge and complaint); *EEOC v. Liberty Loan Corporation*, 584 F.2d 853 (8th Cir. 1978) (two year and two month delay before determination).  The EEOC has conceded that "an unreasonable delay occurred during [its] investigation of the charges from which this lawsuit emanates."  Mem. Supp. EEOC Mot., p. 17, ECF No. 241-1.  Additionally, at this Court's hearing on the EEOC's pending Motion, counsel for the EEOC admitted to this Court that the EEOC's delay of eight years in filing this action "trouble[d]" him.  Hearing Tr., at M-72.  The EEOC has offered no convincing explanation for its delay.  While the EEOC delayed prosecution of this suit, the County continued to accrue retroactive liability.  As this Court observed in *Lockheed Martin*, "[t]he potential for increased back pay liability" is highly "prejudicial."  *Lockheed Martin*, 514 F. Supp. 2d at 805.  Additionally "each month the EEOC did not apprise [the County] of its continuing interest in the case likely led [the County] to believe, with increasing certainty, that it had avoided litigation."  *Id.* at 803.  At this Court's hearing on the pending Motion, counsel for the County indicated that he "thought the case was over" during the period of the EEOC's five and a half year delay and "had no idea what was going on."  Hearing Tr., at M-68.  Accordingly, this Court is authorized to reduce the County's retroactive liability as appropriate.  In light of the extreme circumstances present here, retroactive monetary relief will not be available.

The EEOC objects that the equitable doctrine of laches does not authorize this Court to bar retroactive relief at this stage in the proceedings and is not applicable to its ADEA, as opposed to Title VII, claims or to the *legal* remedy of back pay that it seeks.  Again, the EEOC fails to cite authority holding that laches is inapplicable in this case.  On the contrary,

Judge Legg of this Court has specifically held that "[t]he amount of any damages to be assessed against Baltimore County, and any amount to be disallowed due to the EEOC's delay in filing suit, is to be determined if the EEOC prevails on its claims after the development of a full factual record."  Mem., p. 9, ECF No. 78.  Furthermore, at this Court's hearing on the pending Motion, counsel for the EEOC characterized it as a "difficult question" and an "open question" whether laches applied.  Hearing Tr., at M-70, 71.  However, even if the doctrine of laches is inapplicable to the EEOC's claims in the present case, the United States Supreme Court's decision in *Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 373 (1977) provides an alternative grounds for reducing the County's retroactive liability in light of the EEOC's unreasonable delay.  At this Court's hearing, counsel for the EEOC "concede[d] . . . that, even if laches doesn't apply . . . the Supreme Court's *Occidental* decision" provides an alternative grounds for relief.  Hearing Tr., at M-71.  The Supreme Court in *Occidental* announced the following:

> [A] defendant in a Title VII enforcement action might still be significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action after exhausting its conciliation efforts.  If such cases arise the federal courts do not lack the power to provide relief.  This Court has said that when a Title VII defendant is in fact prejudiced by a private plaintiff's unexcused conduct of a particular case, the trial court *may restrict or even deny backpay relief.  Albemarle Paper Co. v. Moody,* 422 U.S. 405, 424-425 (1975). The same discretionary power "to locate 'a just result' in light of the circumstances peculiar to the case," *ibid.,* can also be exercised when the EEOC is the plaintiff.

*Occidental*, 432 U.S. at 373 (emphasis added); *see also Lockheed Martin*, 514 F. Supp. 2d at 805 ("a court may use its equitable power to '[] located a just result in light of the circumstances peculiar to the case' if the EEOC ultimately prevails on the merits.") (quoting *Occidental*).  In accordance with the *Occidental* decision, this Court now "den[ies]" retroactive relief based on

the EEOC's unreasonable delay in prosecuting this action and the prejudice that delay caused the County in the form of substantially increased retroactive liability.

## **CONCLUSION**

For the reasons stated above, the EEOC's Motion for Determination on Availability of Retroactive and Prospective Monetary Relief (ECF No. 241) is DENIED. Neither retroactive nor prospective monetary relief is mandatory under the Age Discrimination in Employment Act ("ADEA") and, under the circumstances of this case, neither form of relief is appropriate. Even if retroactive monetary relief were mandatory, a closer question than prospective relief, this Court would still decline to award retroactive relief due to the EEOC's unreasonable delay in pursuing its claims. Accordingly, neither retroactive nor prospective monetary relief is available in this case.[21] The Joint Consent Order having been entered on April 26, 2016 (ECF No. 238) and there being no further issues in this case, this matter is now concluded after a seventeen year journey. This case shall be CLOSED.

A separate Order follows.

Dated: August 24, 2016         ___/s/_____

                                            Richard D. Bennett
                                            United States District Judge

---

[21] Baltimore County has indicated that a denial of the EEOC's request for retroactive and prospective monetary relief would render moot its pending Motion for Leave to File Third Party Complaint (ECF No. 221) and would also render moot the pending case of *Baltimore County v. Buck Consultants, LLC*, No. RDB-15-0089, in which the County sought to compel Buck Consultants to defend, indemnify, and hold harmless the County in the present case. County Response, p. 47, ECF No. 243. As discussed herein, neither retroactive nor prospective monetary relief is available in this case, and this case will now be closed. Accordingly, the County's Motion for Leave to File Third Party Complaint (ECF No. 221) is now MOOT. The case of *Baltimore County v. Buck Consultants, LLC*, No. RDB-15-0089 is also MOOT and will now be DISMISSED AS MOOT and closed via a separate Memorandum Order.