IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EQUAL EMPLOYMENT          *
OPPORTUNITY COMMISSION,
                                    *

      Plaintiff,

                                        *           Civil Action No. RDB-07-2500

      v.
                                        *

BALTIMORE COUNTY, *et al.*,
                                        *

      Defendants.
                                        *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

Baltimore County ("Defendant" or "the County") has been found liable under the Age Discrimination in Employment Act of 1967 ("ADEA"), *as amended*, 29 U.S.C. § 621, *et seq.* for administering a pension plan which required older employees to pay higher contribution rates than their younger counterparts.[1] This Court must now determine the scope of the retroactive monetary relief, or back pay, that the Equal Employment Opportunity Commission

---

[1] On January 21, 2009, Judge Benson E. Legg of this Court granted summary judgment in favor of the County. *See EEOC v. Baltimore Cty.*, 593 F. Supp. 2d 797 (D. Md. 2009). Subsequently, the United States Court of Appeals for the Fourth Circuit vacated Judge Legg's ruling and remanded the case to this Court for further proceedings consistent with its Opinion. *See EEOC v. Baltimore Cty.*, 385 F. App'x 322, 325 (4th Cir. 2010). On remand, Judge Legg granted partial summary judgment for the EEOC on the issue of liability. *See EEOC v. Baltimore Cty.*, No. L-07-2500, 2012 WL 5077631 (D. Md. Oct. 17, 2012). The County was granted leave to pursue an interlocutory appeal concerning Judge Legg's ruling. (Dec. 7, 2012 Letter Order 4, ECF No. 206.) While the appeal was pending, this case was transferred to the undersigned upon Judge Legg's retirement from this Court. On March 31, 2014, the Fourth Circuit affirmed Judge Legg's ruling and remanded the case to address the issue of damages. *EEOC v. Baltimore Cty.*, 747 F.3d 267, 274-75 (4th Cir. 2014). On August 24, 2016, this Court ruled that the EEOC was not entitled to retroactive or prospective monetary relief. *EEOC v. Baltimore Cty.*, 202 F. Supp. 3d 499 (D. Md. 2016). The EEOC appealed this Court's denial of retroactive monetary relief, but not its denial of prospective monetary relief. *EEOC v. Balt. County*, 904 F.3d 330, 332 n.2 (4th Cir. 2018). On appeal, the Fourth Circuit vacated this Court's ruling and remanded "for a determination of the amount of back pay to which the affected employees are entitled under the ADEA." *Id.* at 336. On June 17, 2019, the County's subsequent petition for a writ of certiorari was denied. (Supreme Court Remark, ECF No. 256.) On October 16, 2019, this Court conducted a Motions Hearing concerning the issues addressed in this Opinion.

("EEOC") may seek from the County on behalf of the aggrieved employees.

Two Motions are now pending before this Court: Baltimore County's Motion for Ruling on Scope of Class and Class Period (ECF No. 264) and the EEOC's Motion for Determination on the Temporal Scope of Back Pay Owed and Class Eligibility (ECF No. 265). On October 16, 2019, this Court conducted a hearing on these Motions and made rulings from the bench. This Memorandum Opinion supplements these rulings. For the reasons stated on the record and herein, Baltimore County's Motion for Ruling on Scope of Class and Class Period (ECF No. 264) is GRANTED IN PART and DENIED IN PART. The EEOC's Motion for Determination on the Temporal Scope of Back Pay Owed and Class Eligibility (ECF No. 265) is GRANTED IN PART and DENIED IN PART. The EEOC may seek back pay which accrued between March 6, 2006 and April 26, 2016. The EEOC is entitled to pursue discovery concerning an alternative cut-off date of January 1, 2019. By agreement of the parties, the class is defined in the manner set forth in Exhibit 2 of the County's Motion (ECF No. 264-3), except as modified in the manner indicated in this Opinion.

## BACKGROUND

The facts of this case have been recited numerous times. *See EEOC v. Baltimore Cty.*, 747 F.3d 267, 270 (4th Cir. 2014); *EEOC v. Baltimore Cty.*, 202 F. Supp. 3d 499, 502-05 (D. Md. 2016); *EEOC v. Baltimore Cty.*, No. L-07-2500, 2012 WL 5077631, at *1 (D. Md. Oct. 17, 2012); *EEOC v. Baltimore Cty.*, 593 F. Supp. 2d 797, 799 (D. Md. 2009). This Opinion provides a general overview of the case with a focus on its current procedural posture.

In 1945, the County established a mandatory Employee Retirement System (the "pension plan"), under which employees were eligible to retire and receive pension benefits at age 65, regardless of their length of employment. *EEOC v. Baltimore Cty.*, 747 F.3d 267, 270 (4th Cir. 2014). To fund the pension plan, employees were required to make contributions at rates calculated by the County's actuarial firm, Buck Consultants. *Id.* Under the contribution rates recommended by Buck Consultants and adopted by the County, "the older that an employee was at the time of enrollment [in the pension plan], the higher the rate that the employee was required to contribute." *Id.* Although the terms of the pension plan were modified several times in subsequent years, contribution rates remained higher for older employees. *Id.* at 271.

"In 1999 and 2000, two County correctional officers, Wayne A. Lee and Richard J. Bosse, Sr., aged 51 and 64, respectively, filed charges of discrimination with the EEOC alleging that the County's plan and disparate contribution rates discriminated against them based on their ages." *Id.* Over five and ½ years later, on March 6, 2006, the EEOC issued letters of determination finding that the County's pension plan violated the ADEA. After conciliation efforts failed, the EEOC filed the present action in 2007.

In January 2009, Judge Benson E. Legg of this Court held that the pension plan did not violate the ADEA and granted Summary Judgment in favor of the County. *See EEOC v. Baltimore Cty.*, 593 F. Supp. 2d 797 (D. Md. 2009). The United States Court of Appeals for the Fourth Circuit vacated the decision. *EEOC v. Baltimore Cty.*, 385 F. App'x 322, 325 (4th Cir. 2010). On remand, this Court granted partial summary judgment for the EEOC on the issue of liability. *EEOC v. Baltimore Cty.*, No. L-07-2500, 2012 WL 5077631, at *1 (D. Md. Oct. 17,

2012).  Subsequently, the County was granted leave to file an interlocutory appeal.  (Dec. 7, 2012 Letter Order 4, ECF No. 206.)  The Fourth Circuit affirmed the ruling and remanded this case "for further proceedings to address the issue of damages."  *EEOC v. Baltimore Cty.*, 747 F.3d 267, 274-75 (4th Cir. 2014).

On April 22, 2016 the parties and all six unions representing the County employees participating in the pension plan agreed to a Joint Consent Order (ECF No. 238), which resolved the EEOC's claims for injunctive relief.  The Consent Order required the County to equalize pension plan contribution rates by July 1, 2018.  (ECF No. 238 at ¶¶ 15, 16.)  On April 26, 2016, this Court approved the Joint Consent Order by marginal order.  (ECF No. 238).

On May 6, 2016, the EEOC moved for a determination on the availability of retroactive and prospective monetary relief.  Subsequently, this Court issued an Opinion holding that the ADEA granted courts discretion to fix appropriate relief upon a finding of age discrimination and determined that neither retroactive nor prospective relief was appropriate in this case. *EEOC v. Baltimore Cty.*, 202 F. Supp. 3d 499, 505-11 (D. Md. 2016).  The EEOC appealed this Court's determination concerning the back pay award, but did not appeal this Court's denial of prospective relief.  *EEOC v. Baltimore Cty.*, 904 F.3d 330, 332 n.2 (4th Cir. 2018).

On September 19, 2018, the United States Court of Appeals for the Fourth Circuit vacated this Court's judgment, holding that "a retroactive monetary award of back pay under the ADEA is mandatory upon a finding of liability." *Id.* at 333.  The Court remanded the case to this Court "for a determination of the amount of back pay to which the affected employees

4

are entitled under the ADEA." *EEOC v. Baltimore Cty.*, 904 F.3d at 335. Following the Fourth Circuit's decision, Baltimore County filed a petition for writ of certiorari to the United States Supreme Court. On June 17, 2019, the Supreme Court denied the petition and proceedings in this Court resumed. (ECF No. 256.)

In August 2019, the parties submitted correspondence indicating that they sought this Court's ruling on the temporal scope of the back pay award, the scope of the class of aggrieved individuals for whom the EEOC could pursue a backpay award, and various other legal matters necessary to the resolution of this case. (ECF No. 262.) Subsequently, the parties simultaneously filed two motions which are now pending: Baltimore County's Motion for Ruling on Scope of Class and Class Period (ECF No. 264) and the EEOC's Motion for Determination on the Temporal Scope of Back Pay Owed and Class Eligibility (ECF No. 265).

## ANALYSIS

The parties present three issues for this Court's resolution. First, the parties ask this Court to determine whether the EEOC must follow the procedures associated with collective actions brought under the Fair Labor Standards Act, including the requirement that employees "opt in" to join the EEOC's lawsuit. Second, the parties seek clarification concerning the temporal scope of the back pay to be awarded. Finally, this Court must define the scope of the class of employees on whose behalf the EEOC may seek back pay. This Opinion addresses these issues *seriatim*, all of which were addressed at the hearing of October 16, 2019.

## I. The EEOC is not required to adhere to the procedural requirements of collective actions under the Fair Labor Standards Act.

The Age Discrimination in Employment Act is "'something of a hybrid,' combining features of several other statutes." *EEOC v. Gilbarco, Inc.*, 615 F.2d 985, 988 (4th Cir. 1980) (quoting *Lorillard v. Pons*, 434 U.S. 575, 578, 98 S. Ct. 866 (1976)). The ADEA provides a private cause of action for aggrieved employees and, alternatively, permits the EEOC to pursue back pay on their behalf. *See* 29 U.S.C. § 626(a), (b), & (c). The statute does not provide its own, discrete procedures governing an action instituted by the EEOC. Instead, § 626(b) mandates that the ADEA "shall be enforced in accordance with the powers, remedies, and procedures provided in" certain provisions of the Fair Labor Standards Act. Among these provisions are §§ 16(b) & (c) of the FLSA, *as amended*, 29 U.S.C. § 216(b) & (c). The two provisions govern two very different types of FLSA actions. Section 16(b) governs collective actions brought by employees on behalf of themselves and others similarly situated, while § 16(c) governs actions brought by the Secretary of Labor on behalf of aggrieved employees. Collective actions under § 16(b) require employees to "opt-in," or consent, to suit. *Id.* Section 16(c) does not explicitly require the Secretary of Labor to obtain the consent of employees before pursuing an action to recover wages on their behalf.

The County argues that the EEOC must follow procedures associated with FLSA collective actions under § 16(b), including the requirement that it obtain the consent of Baltimore County employees before seeking monetary relief on their behalf. *See* 29 U.S.C. § 216(b). During the Motions Hearing, counsel for the County candidly acknowledged that his argument was "strictly statutory" and that he was unable to locate any case law in support of this proposition. For its part, the EEOC argues that the procedures outlined in § 16(c) govern

this action and, accordingly, it is not required to obtain the consent of employees before pursuing back pay on their behalf. In its briefing and at oral argument, the EEOC cited persuasive authority to this effect. *EEOC v. Chrysler Corp.*, 546 F. Supp. 54 (E.D. Mich. 1982) (holding that EEOC need not obtain consent of employees when pursuing an enforcement action under the ADEA), *aff'd* 733 F.2d 1183 (6th Cir. 1984); *see also EEOC v. New Mexico Dep't of Corrs.*, Civ. No. 15-879 KG/KK, 2017 WL 6001752 (D.N.M. Dec. 4, 2017) (applying § 16(c) to EEOC enforcement action under the ADEA and concluding that the EEOC need only identify employees by name in its complaint or equivalent pleading to satisfy § 16(c)'s procedural requirements); *EEOC v. Hi-Line Electric Co.*, Case No. 3:09-CV-1848-F, 2012 WL 13026824 (N.D. Tex. Jan. 10, 2012) (same).

The ADEA's statutory scheme plainly permits the EEOC to pursue an enforcement action under its provisions without obtaining the consent of the employees it seeks to benefit. The ADEA permits private actions by individuals and by the EEOC. *See* 29 U.S.C. § 626(a), (b), and (c). The FLSA has a parallel structure: it permits actions by private employees and the Department of Labor. *See* 29 U.S.C. § 216(b) and (c). The ADEA expressly incorporates these provisions of the FLSA. *See* 29 U.S.C. § 626(b). When the EEOC files suit under the Age Discrimination in Employment Act pursuant to its authority under § 626(b), it must look to § 216(c) of the Fair Labor Standards Act for the procedures it must follow. These procedures do not require the Secretary of Labor, or the EEOC, to obtain the consent of employees before pursuing an action on their behalf. *See EEOC v. City of Chicago*, No. 85 C 8327, 1987 WL 15388, at *1 (N.D. Ill. 1987) (remarking upon the parallel structure of the two statutes and concluding that the EEOC need not seek the consent of employees when

pursuing an action under the ADEA). There is simply no reason to read these statutes in such a way as to require the EEOC to obey the procedures governing *private* actions under the FLSA while ignoring those governing administrative enforcement actions under the FLSA.

When pursuing and ADEA action under § 16(c), the EEOC is not required to obtain the consent of employees. The statute's plain language and its history support this conclusion. As previously noted, the plain language of § 16(c) does not require the relevant enforcing agency—in this case, the EEOC—to obtain consent or follow the opt-in procedures described in § 16(b). As discussed in *Chrysler Corp.*, at the time of the ADEA's enactment in 1967, § 16(c) required the Secretary of Labor to obtain the consent of employees before compelling the payment of unpaid wages on their behalf. 546 F. Supp. at 73. In 1974, Congress amended the FLSA to eliminate the consent requirement. *Id.* In 1978, Congress made several amendments to the ADEA, but made no effort to retain the consent requirement formerly codified in the FLSA. *Id.* at 74. As explained in greater detail in the *Chrysler Corp.* decision, Congress's actions invite the inference that "the elimination of the consent requirements from the FLSA § 216(c) also removes that requirement from actions brought under the ADEA pursuant to FLSA procedures." *Id.* at 75; *see also City of Chicago*, 1987 WL 15388, at *2 (holding that "consent is no longer required" under § 16(c), and therefore the EEOC need not obtain employee consent before enforcing the ADEA).

In this case, the EEOC seeks back pay under the ADEA pursuant to its authority under 29 U.S.C. §§ 216(c). (Am. Compl. ¶ 1.) The provisions governing FLSA collective actions are not applicable, and § 16(c) does not require the EEOC to obtain the consent of employees

before pursuing this matter. Accordingly, employees are not required to "opt-in" to this action.

**II. The EEOC may seek back pay accruing between March 6, 2006 and April 26, 2016.**

The parties agree that the EEOC may not pursue retroactive monetary relief, or back pay, which accrued before March 6, 2006.[2] They disagree about the cut-off date. The EEOC argues that it must be permitted to pursue back pay accruing until January 1, 2019, which is the date upon which the discriminatory contribution rates were finally phased out. Baltimore County proposes the cut-off date of September 18, 2007 (when the EEOC filed suit). Alternatively, it requests November 3, 2014 (when the Supreme Court denied *certiorari* following Judge Legg's summary judgment decision in favor of the EEOC) or April 26, 2016 (when this Court approved the parties' Joint Consent Order regarding injunctive relief). For the reasons that follow, the April 26, 2016 cut-off date is the most appropriate.[3] However, to conserve judicial resources and to expedite this matter in the event of another appeal, this Court will permit discovery and a potential jury trial with respect to calculations concerning a back pay period extending to January 1, 2019.

**A. The back pay period shall terminate on April 26, 2016.**

A plaintiff who has prevailed on his ADEA claim is entitled to a back pay award covering a period from the date when the discriminatory practice began until the date it ceased,

---

[2] This start-date for back pay is consistent with the EEOC's representation to the Fourth Circuit that it "will not seek monetary relief for the excessive deductions that the [C]ounty made before the [EEOC] issued its letter of determination." *EEOC v. Baltimore Cty.*, 904 F.3d at 336.

[3] For the reasons stated on the record, this Court rejects the proposed cut-off dates of September 18, 2007 and November 3, 2014.

9

or until judgment is entered. On appeal in this matter, the Court broadly defined back pay as "generally encompass[ing] the compensation an employee would have received but for the employer's violation of the ADEA." *EEOC v. Baltimore Cty.*, 904 F.3d at 332 n.3. In the Title VII context, the Fourth Circuit has indicated that back pay should be awarded "for a period commencing at the time the employee was unlawfully denied a position until the date of judgment, subject to the applicable statute of limitations." *Patterson v. Am. Tobacco Co.*, 535 F.2d 257, 269 (4th Cir. 1976). Other circuits have held that, in discriminatory discharge claims brought under ADEA, back pay runs from the time of termination until the date of judgment. *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 167 (2d Cir. 1998); *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1251-52 (11th Cir. 1997).

Back pay may cease to accrue if the ADEA violation is remedied before judgment. For example, an employer may toll the accrual of back pay by offering reinstatement to a discharged employee or offering a promotion to an employee who has been denied one. *See Ford Motor Co. v. EEOC*, 458 U.S. 219, 232, 102 S. Ct. 3067 (1982) ("[A]n employer charged with unlawful discrimination often can toll the accrual of backpay liability by unconditionally offering the claimant the job he sought, and thereby providing him with an opportunity to minimize damages."); *see also Crump v. United States Dep't of Navy*, 205 F. Supp. 3d 730, 745-46 (E.D. Va. 2016) (discussing circumstances which require tolling of back pay).

The April 26, 2016 Joint Consent Order implemented a plan for the gradual equalization of employee contribution rates over the course of two years. (ECF No. 236.) As this Court previously held, the Joint Consent Order allowed the EEOC to fulfill its "public policy goal of eliminating age discrimination in the Baltimore County pension system." *EEOC*

*v. Baltimore Cty.*, 202 F. Supp. 3d at 520. Based in part on this observation, this Court determined that the EEOC was not entitled to pursue retroactive or prospective monetary relief. *Id.* Although this decision was vacated on appeal based on the Fourth Circuit's determination that this Court did not have discretion to withhold back pay, the Fourth Circuit made no ruling as to whether the entry of the Consent Order could reduce the County's liability.

On remand, it still appears grossly unfair to hold the County liable for back pay accruing during the implementation of a plan agreed to by all parties. The Joint Consent Order in this context is comparable to an offer of re-instatement in the general run of ADEA employment cases. Both the Joint Consent Order and offers of re-instatement benefit aggrieved employees and ensure that the worst effects of discrimination will not continue. Neither remedies are perfect. In this case, the Joint Consent Order contemplated a gradual reduction of the discriminatory contribution rates but did not instantaneously eliminate them. Likewise, reinstatement does not instantaneously relieve an employee of the taint of discrimination permeating his workplace or the humiliation of losing his job. It would be anomalous to permit one form of imperfect remediation to toll back pay, but not the other. In this case, the parties cooperated to fashion a method of eliminating the discriminatory rates, and it is the enactment of this remedy which terminates the period of back pay.

### B. The EEOC has waived its entitlement to back pay accruing between April 26, 2016 and January 1, 2019.

This Court's prior ruling forecloses an award of back pay covering the period between April 26, 2016 and January 1, 2019. This Court and the parties previously understood the term

"prospective relief" as embracing the period following the entry of the Consent Order. The Order plainly indicates that the parties understood the term "prospective relief" to embrace monetary relief stemming from the "phase-in of age-neutral contribution rates." (ECF No. 236 at ¶ 2.) In its prior Opinion, this Court determined that the EEOC was not entitled to prospective relief corresponding to "the period of time during which [the] employee contribution equalization plan is implemented." *EEOC v. Balt. Cty.*, 202 F. Supp. 3d at 514.

The EEOC did not appeal the Court's ruling on prospective relief and has waived its right to pursue prospective relief. *See EEOC v. Baltimore Cty.*, 904 F.3d at 332 n.2. The EEOC may not circumvent this problem by defining "back pay" as terminating on January 1, 2019—the date on which the discriminatory contribution rates were finally eliminated. To define back pay in a manner which would embrace what was formerly considered front pay would constitute an untenable course reversal. The back pay period must terminate on April 26, 2016. Any amounts accruing after that date as a result of the gradual phase-in of the neutral contribution rates is "front pay" to which the EEOC is not entitled.

### C. Discovery is permitted concerning the alternative cut-off date of January 1, 2019.

This case has been the subject of numerous appeals and several remands to this Court. To conserve judicial resources in the event of another appeal, discovery is permitted concerning an alternative back pay period beginning on March 6, 2006 and terminating on January 1, 2019. Following discovery, the parties will be permitted to submit Summary Judgment motions concerning the back pay award covering the period between March 6, 2006 and April 26, 2016 and an alternative period running from March 6, 2006 to January 1, 2019.

If there is no genuine issue of material fact as to the back pay owed between these periods, then this Court will grant Summary Judgment on the issue and fix a back pay award corresponding to the April 26, 2016 cut-off date. In that event, this Court would make an alternative finding concerning the back pay owed between March 6, 2006 and January 1, 2019. If Summary Judgment is not appropriate, then this case will proceed to a jury trial.[4] The jury would receive a special verdict form which would permit it to make fact findings concerning the two periods.

### III. The scope of the class of individuals represented by the EEOC.

In its original submission to this Court, the EEOC sought to represent a class of individuals who were required to participate in the County's pension plan and who, "from the time they turned 40 onward, contributed more than they would have if age had not been a factor in determining contribution rates." (ECF No. 265-1 at 12.) In its submission, Baltimore County objected to defining this class so broadly. It argued that the scope of the class should be constrained by the EEOC charges filed by Lee and Bosse and the EEOC's representations during the conciliation process, during which time it narrowly defined the "aggrieved individuals" it sought to vindicate. (ECF No. 264 at 8-9; ECF No. 266.) Alternatively, the County argued that the EEOC may not pursue ADEA violations on behalf of union members because the six union defendants bargained for the contribution rates at issue in this case and because the Memoranda of Understanding governing the employment of the union members

---

[4] The Defendant has not consented to the appointment of a special master, as is required in this case. Fed. R. Civ. P. 53(a)(1)(A) (requiring all parties to consent to appointment of a special master); 9C Wright and Miller, FEDERAL PRACTICE & PROCEDURE ¶ 2604 (3d Ed. April 2019 Update) ("[M]asters now can be appointed in jury cases only when the parties have given their consent.").

contain grievance and arbitration procedures which have not been followed. (ECF No. 264 at 9-13.)

During the motions hearing, the parties indicated that they would consent to a detailed class definition outlined in Exhibit 2 of the County's Motion should this Court reject the County's arguments. (Def. Ex 2, ECF No. 264-3.) This Court rejects the County's arguments. Accordingly, the class shall be defined as indicated in the County's Exhibit 2 (ECF No. 264-3), except as modified in the manner indicated below.

### A. The class scope is not limited by the EEOC charge or conciliation proceedings.

Baltimore County argues that the EEOC may only pursue back pay on behalf of correctional officers because Lee and Bosse's charges of discrimination only refer to discriminatory contribution rates imposed on correctional officers, but do not refer to other employees. Additionally, the County argues that the EEOC may only represent the interests of a narrow category of aggrieved individuals described in correspondence from an EEOC investigator submitted during ADEA-mandated conciliation efforts between March 16, 2006 and February 20, 2007. (ECF No. 266 at 1-2.) This Court rejects these arguments. The County has waived arguments concerning the EEOC charge and conciliation efforts by posing them thirteen years after this case commenced. Furthermore, the arguments are otherwise meritless.

Before an individual employee pursues an ADEA claim, he must first file a charge of discrimination with the EEOC. *See* 29 U.S.C. § 626(d)(1). The EEOC, however, need not await the filing of a charge of discrimination before filing suit. *See Gilmer v. Interstate/Johnson*

14

*Lane Corp.*, 500 U.S. 20, 28, 111 S. Ct. 1647 (1991) ("[T]he EEOC's role in combatting age discrimination is not dependent on the filing of a charge . . . ."); *EEOC v. American & Effird Mills, Inc.*, 964 F.2d 300, 303 (4th Cir. 1992) ("Nothing in [the ADEA] hinges EEOC authority on the filing of a valid employee charge."); *see also EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1537 (2d Cir. 1996) (holding that EEOC had authority to pursue ADEA claims even though employees had not filed charges). Instead, it must "attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference and persuasion." 29 U.S.C. § 626(b). Like an employee's charge of discrimination, conciliation efforts are "mandatory" and a "necessary precondition to filing a lawsuit." *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015).

Recently, the United States Supreme Court held that the EEOC charge requirement is a "mandatory claim-processing rule," but is not jurisdictional in nature. *Fort Bend Cty. v. Davis*, --- U.S. ---, 139 S. Ct. 1843 (2019). Accordingly, a defendant may waive a defense based on an allegedly insufficient charge of discrimination by failing to raise the issue in a timely manner. Given that conciliation is also a necessary prerequisite to suit that neither the Supreme Court nor the ADEA has declared jurisdictional, it follows that the conciliation requirement is also a claim-processing rule which may be waived if not timely asserted. *See EEOC v. MVM, Inc.*, TDC-17-2881, 2018 WL 1882715 (D. Md. Apr. 19, 2018) (noting that there is an absence of authority for the proposition that the EEOC's conciliation requirement is jurisdictional).

15

In this case, Baltimore County has waited roughly thirteen years to assert these defenses. The County offers no explanation for its delay. The County's failure to raise the issue for over a decade and failure to supply any explanation for the delay results in waiver.

Even if the County had not waived these arguments, they would fail on the merits. No authority supports the County's contention that Lee and Bosse's charges limit the scope of the class. The EEOC has independent authority to initiate EEOC actions. The EEOC need not constrain its lawsuit to claims presented in charges of discrimination because it may file suit even in the complete absence of a charge. *See, e.g.*, *Arizona v. Geo Group, Inc.*, 816 F.3d 1189, 1204 n.9 (9th Cir. 2016) (explaining that the EEOC may pursue claims on behalf of a class of employees even if those claims did not appear in the allegations of the original charges).

The County's argument that the EEOC has failed to adhere to the conciliation requirement is equally meritless. To satisfy the conciliation requirement, the EEOC need only "communicate in some way about 'an alleged unlawful employment practice' and 'endeavor' to achieve compliance." *Mach Mining*, 135 S. Ct. at 1655. The EEOC must also "inform the employer about the specific allegation . . . [and] describe[] both what the employer has done and which employees (or what class of employees) have suffered as a result." *Id.* at 1656.

In this case, the EEOC satisfied the conciliation requirement by informing the Defendant, by means of the Determination Letter, that "the evidence gathered in the investigation showed Respondent's mandatory pension plan required older employees to pay more than younger employees for the same benefit" in violation of the ADEA. (Declaration of Director Rhodes at ¶ 4(a), ECF No. 267-1.) The initial EEOC conciliation proposal refers

to "the class of employees, who were within the protected age group during the relevant period of January 1, 1996 to the present, who made excessive contributions to the Employee Retirement System." (*Id.* at ¶ 4(c).) These statements indicate that the EEOC was seeking conciliation for all employees protected by the ADEA who were discriminated against in contribution rates. There is simply no basis for concluding that the EEOC failed its conciliation efforts. The fact that the EEOC at one point referenced a narrower class of individuals is of no moment.

### B. The Memoranda of Understanding cannot limit the class scope.

The County has argued that the EEOC may not pursue ADEA violations on behalf of union members because the six union defendants bargained for the contribution rates at issue in this case and because the Memoranda of Understanding governing the employment of the union members contain grievance and arbitration procedures which have not been followed. (ECF No. 264 at 9-13.) Previously, this Court noted that the existence of the union agreements militated against the imposition of a monetary award. *EEOC v. Baltimore Cty.*, 202 F. Supp. 3d at 519-520. This determination was vacated in light of the Fourth Circuit's holding that back pay awards under the ADEA are not discretionary. Now, this Court must consider whether those same agreements absolutely foreclose any recovery of back pay for union members.

The mere fact that the unions have bargained for the rates at issue in this lawsuit does not prohibit the EEOC from pursuing damages on behalf of the union members. As a preliminary matter, the Supreme Court has held that unions may not prospectively waive the

17

substantive federal rights of their employees. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265-66, 273, 129 S. Ct. 1456 (2009). Accordingly, the unions cannot bargain for policies that violate the ADEA and thereby waive the union members' federal statutory rights.

The County's arguments also misapprehend the nature of this lawsuit. The EEOC is not bound to contracts to which it is not a party, including those entered between employees and employers or unions and employers. In *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291, 122 S. Ct. 754 (2002), the United States Supreme Court held that the EEOC may pursue victim-specific relief on behalf of an employee for his employer's ADA violations notwithstanding an arbitration agreement entered between the employee and his employer. 534 U.S. at 297, 122 S. Ct. 754. In reaching this decision, the Supreme Court emphasized that the EEOC is the "master of its own case" and that it may even pursue cases in defiance of an employee's wishes. *Id.* at 291, 122 S. Ct. 754. The Court also noted that the EEOC is not a party to an employee's contracts, and therefore is not bound by such agreements. *Id.* at 294, 122 S. Ct. 754. Rather, when the EEOC pursues an action, it does so in service of a public interest and not merely in pursuit of victim-specific relief. *Id.* at 765, 122 S. Ct. 754. Given the nature of EEOC proceedings, the Supreme Court held it would be anomalous to hold the agency captive to the agreements of third parties.

In this case, six union defendants negotiated for the contribution rates which have been found to violate the ADEA. They have also entered into Memoranda of Understanding which require their employees to follow certain grievance procedures and arbitration provisions. While these facts certainly weigh against the provision of a back pay award, the Fourth Circuit has held that this Court has no discretion to withhold one. Supreme Court precedent makes

clear that the EEOC may pursue this matter despite the content of the union agreements. Accordingly, the memoranda of understanding cannot limit the scope of the class of persons the EEOC seeks to vindicate with this lawsuit.

### C. The scope of the class is defined by reference to Exhibit 2 of the County's Motion (ECF No. 264-3), except as indicated below.

The parties have indicated that they consent to a class definition corresponding to Exhibit 2 of the County's Motion. (ECF No. 264-3). The EEOC seeks only a single amendment to the Exhibit, namely, the removal of the last bullet on the first page of the exhibit, which reads as follows:

> 3: The following employees are EXCLUDED from the class of similarly situated employees:
>
> . . .
>
> Wayne Lee and Richard Bosse because they both retired prior to March 6, 2006.

(ECF No. 264-3 at 2.) The EEOC seeks back pay on behalf of Bosse and Lee even though it appears that they do not fall within the class. For present purposes, this carve out will be permitted. At the close of discovery, the County may move to dismiss the claims of Bosse and Lee to the extent that it has not waived this issue.

### CONCLUSION

For the forgoing reasons, Baltimore County's Motion for Ruling on Scope of Class and Class Period (ECF No. 264) is GRANTED IN PART and DENIED IN PART. The EEOC's Motion for Determination on the Temporal Scope of Back Pay Owed and Class Eligibility

(ECF No. 265) is GRANTED IN PART and DENIED IN PART. The EEOC may seek back pay which accrued between March 6, 2006 and April 26, 2016. The parties are entitled to pursue discovery concerning an alternative cut-off date of January 1, 2019. By agreement of the parties, the class is defined in the manner set forth in Exhibit 2 of the County's Motion (ECF No. 264-3), except as modified in the manner indicated in this opinion.

A separate Order follows.

Dated: October 28, 2019

_____/s/_____
Richard D. Bennett
United States District Judge